Argued March 20, affirmed May 12, reconsideration denied
June 11, petition for review denied June 24, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
HUSTON, *Respondent, and* HUSTON (No. 74-323E),
*Appellant.*
534 P2d 1166

*Alan M. Lee,* Klamath Falls, argued the cause for appellant. With him on the brief were Smith & Lee, Klamath Falls.

*Robert S. Hamilton,* Klamath Falls, argued the cause for respondent. With him on the brief were Beddoe & Hamilton, Klamath Falls.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Satisfied that irreconcilable differences required the dissolution of the parties' 29-year-long marriage, the court below issued a decree terminating their nuptial contract on January 14, 1974. Incorporated into that decree were provisions providing for (1) the custody and support of a dependent minor child, (2) the division of personal property, and (3) monthly support payments by the husband to the wife, to continue until her death or remarriage.

Appellant-wife challenges only that portion of the decree providing for her support, suggesting that payments of $50 per month are "insufficient under the relative circumstances of the parties and their standard of living prior to the dissolution."

As an adjunct to the dissolution of a marriage, circuit courts are authorized by ORS 107.105(1)(c) to compel either of the marital partners to contribute "such amount of money for such period of time as it may be just and equitable" for such party to contribute to the support of the other. Guidance in the determination of what may be a "just and equitable" award of support is provided by the enumeration of specific factors to be considered in each case, including:

"* * * * *

"(D) [The parties'] work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

"(F) The provisions of the decree relating to custody of the minor children of the parties;

"* * * * *

"(H) Such other matters as the court shall deem relevant." ORS 107.105(1)(c).

In addition to requiring payment of support for the benefit of appellant-wife, the court below also ordered the husband to make monthly payments of $150 to her for the support of their 10-year-old son, *and* to maintain for the benefit of the child the medical, doctor, hospital, drug and dental insurance available through his place of employment.

As a result of the property division included in the decree, appellant-wife received assets—including a judgment against the husband in the amount of $10,000—having a total value of approximately $15,-000. Those items secured by the husband were, on the other hand, valued at some $6,000.

■ In light of these provisions, we have concluded that the circuit court's order requiring monthly support payments of $50 for her was reasonable.[1] The

---

[1] No specific amount of support was requested by the wife. In his original petition for dissolution the husband alleged that $100 per month for four years would be a proper amount for him to contribute to her support. In his amended petition he deleted any reference to support for the wife. The wife testified that her living expenses would be $385 per month and the evidence showed that she would be receiving about that amount from the combination of her present employment, the $150 child support and the $50 for her support ordered by the court. She stated that it would require "[p]robably double" the $385 to return to the standard of living enjoyed when they were living in the large house which they sold about a year before the

record in this case indicates that neither the wife nor the husband will likely be capable of maintaining a lifestyle comparable to that enjoyed prior to the termination of the marital relationship; we are satisfied that the decree of the circuit court represents the best attempt to alleviate the hardships imposed upon both parties by the dissolution of their marriage.

Affirmed.

THORNTON, J., dissenting.

The majority opinion concludes that the $50 a month permanent support awarded to the wife by the trial judge is sufficient. In my view this amount is inadequate under the evidence.

The parties in this case were married 29 years.

---

dissolution. But when she was asked on redirect examination about the amount of "alimony" she thought she should have she responded as follows:

"Q. Mrs. Huston, this is a question I neglected to ask you but the petition in this case, in the amended petition, I guess it is the original petition, indicates a payment of alimony for a period of four years of $100 a month. Do you desire that the Court review the facts and evidence of this case and make a determination of what property and alimony and child support, if any, is going to be paid?

"A. Yes.

"Q. You are willing to leave that up to the Court.

"A. Yes.

"Q. Do you have a specific feeling for instance about alimony itself?

"A. I need it.

"Q. Do you desire that the Court set it for a fixed period or for a period until death or remarriage?

"A. Until death or remarriage.

"Q. Do you anticipate any great change occurring in your life over the next 15 years as far as money or financial matters are concerned?

"A. No."

The trial court then awarded her, instead of the $100 for four years mentioned in her counsel's question, the sum of $50 per month "until death or remarriage."

Five children were born to their union. During almost the entire marriage the wife devoted her energies solely to the task of homemaking and rearing the children. The wife still has the responsibility for the youngest, a 10-year-old boy, who was placed in her custody by the trial court.

As one would expect where a couple has raised and educated a houseful of children on the husband's modest salary, the assets which the family had accumulated during the marriage are not great. Nevertheless, that they are able to save as much as they did is a testimonial to the frugality of both.

For the past four years the wife has worked as a kitchen employe in a Klamath Falls public school. She has no specialized training or job skills except for those required to perform her present job. Her net monthly income is only $234 during the school year (nine months). This is supplemented by the $150 a month which the husband contributes to the support of the minor child. The wife's actual monthly expenses total $311.68. In addition she estimated additional expenses for doctor, dentist, clothing and household necessities of $48, for a total monthly expense of $359.68. Even with the addition of the child support, the wife is going to be extremely hard pressed to make ends meet.

The evidence shows that the husband is Director of Placement at the Oregon Institute of Technology, and was 54 years of age at the time of the decree. His monthly salary after deductions is approximately $929.15. He estimates his monthly expenses, including payments on a motorhome and a Jeep, are $635.19.

Examining the husband's expenses as of the date of trial, it appears that two items are of relatively limited duration: the monthly payments on the

husband's motorhome and on his Jeep. The monthly payment on the motorhome is $166.67, with a balance of $2,666.72. On the 1973 Jeep, the monthly payments are $102.25, with a balance of $2,568. Assuming regular payments, it would appear that within approximately two years, when the husband has paid for the motorhome and the Jeep, he would have an additional $268 of disposable income. More important, in six years, when the husband reaches age 60, he will start drawing his naval retirement pay. At that point his spendable income will increase by approximately $250 a month, according to his own testimony.

The record indicates that the husband's salary enables him to pay more support to the wife than was awarded. In addition, his future income potential, including state and military retirement benefits, as compared to that of his ex-wife is much greater.

As we said in *Kitson and Kitson,* 17 Or App 648, 656, 523 P2d 575, Sup Ct *review denied* (1974):

"* * * [I]f the wife is * * * only employable at a low income compared to her standard of living during the marriage then, generally speaking, permanent support is appropriate."

Taking into consideration the various factors listed in ORS 107.105(1)(c),[1] and *Kitson and Kitson,*

---

[1] ORS 107.105(1)(c) provides:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"* * * * *

"(c) * * * In making * * * [a] support order the court shall consider the following matters:

"(A) The duration of the marriage;

"(B) The ages of the parties;

"(C) Their health and conditions;

"(D) Their work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

supra, including especially the following: the wife is lacking in adequate job skills and education; she is employed at a relatively low wage; her income is greatly disproportionate to that of the husband; and her present standard of living is quite low and in all likelihood will continue so, and is not proportionate to the standard of living she enjoyed during the marriage as a faculty wife; I would modify the decree to require the husband to provide support to the wife of at least $100 a month until she (1) remarries, or (2) reaches age 62, or (3) dies. *Kitson and Kitson,* supra; *Dodge and Dodge,* 19 Or App 363, 527 P2d 750 (1974). The fact that the trial court gave the wife the greater share of the assets of the parties (she received $15,000) would not, in view of the disparity in the future earning capacity of the parties, justify fixing the support at such a low figure.

"(F) The provisions of the decree relating to custody of the minor children of the parties;

"(G) The ages, health and dependency conditions of the children of the parties, or either of them; and

"(H) Such other matters as the court shall deem relevant."