Argued July 12, modified and remanded November 8, petition for
rehearing denied by opinion December 28, 1977
See 280 Or 769, 572 P2d 1320 (1977)

In the Matter of the Dissolution of the Marriage of
GROVE, *Respondent,*
*and*
GROVE, *Petitioner.*
(CA 6484, TC 75-4803, SC 25217)

571 P2d 477

[ 342 ]

[ 342-a ]

Karen L. Gross, Certified Law Student, Springfield, argued the cause for petitioner. With her on the briefs was William A. Babcock, Eugene.

Margie Hendriksen, of Englemann, Hendriksen & Ozanne, Eugene, argued the cause and submitted briefs for respondent.

LENT, J.

**LENT, J.**

This is a dissolution of marriage case in which the issue on appeal was the amount and duration of spousal support for the wife. The Court of Appeals increased the amount of the monthly support payment and held that it should not terminate after five years, as the trial court's decree had provided, but should continue until death or the wife's remarriage. The husband, in his petition for review, contends that the Court of Appeals, in this and similar cases, has not given proper effect to the statutory criteria for determining spousal support, and has been deciding the cases before it on an *ad hoc* basis. We granted review to consider generally the proper approach to determining the amount and duration of spousal support. In particular, we asked the parties to address the following questions in argument:

> 1. ORS 107.105 (1) (c) defines certain factors which a court shall consider in determining the amount and duration of spousal support. Has the Court of Appeals erred by emphasizing some of these factors at the expense of others? Can this court provide a guideline for consistent application of the statutory criteria? If so, what might that guideline be?
>
> 2. In this case, the Court of Appeals held that spousal support would terminate upon the wife's remarriage. Should spousal support automatically terminate upon the remarriage of the party receiving support? What is the rationale for termination of support upon remarriage?

We will discuss these and other general questions involving the award of spousal support before considering the specific facts of this case.

At the time of the proceedings and decree in this case, ORS 107.105(1)(c) empowered the court, in a dissolution case, to provide:

> "For the support of a party in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to

[ 343 ]

contribute. * * * In making such support order, the court shall consider the following matters:

(A) The duration of the marriage;
(B) The ages of the parties;
(C) Their health and conditions;
(D) Their work experience and earning capacities;
(E) Their financial conditions, resources and property rights;
(F) The provisions of the decree relating to custody of the minor children of the parties;
(G) The ages, health and dependency conditions of the children of the parties, or either of them; and
(H) Such other matters as the court shall deem relevant."

Our discussion of the application of this provision begins with some general observations. In the first place, although the issue with which we are here concerned is spousal support, that issue cannot adequately be considered except in light of the provisions in the dissolution decree for division of property and child support. Legislative recognition of this interrelationship is found in paragraphs (E), (F) and (G) of ORS 107.105(1)(c). In practice, the financial portions of a dissolution decree are worked out together, and none can be considered in isolation. For example, one spouse may be awarded specific assets as part of the property division in order to provide that spouse with income. Where minor children are involved, the custodial spouse will necessarily derive some benefit from child support payments, insofar as they are applied to the maintenance of the household. It is proper to consider such matters in determining the appropriate level of spousal support.

In the second place, the cases in which the Court of Appeals considers matters of spousal support are not, for the most part, representative of marriage dissolution cases generally. The cases which are appealed are, with an occasional exception, those in which the parties' assets or projected incomes, or both, are sufficient to permit some flexibility of disposition without depriving either party of the basic necessities.

Many of these cases involve parties in their middle forties or older. Frequently the marriage being dissolved is of long duration.[1]

The present case is fairly typical of those which the Court of Appeals often considers. The parties had been married for 23 years, and their total net income, at the time of the decree, exceeded $20,000 a year. Much of what we say in this opinion will be said with this type of case in mind, and will not necessarily be directly applicable to other situations.

*Legislative policy governing spousal support*

The legislature in ORS 107.105(1)(c) made certain policy choices by indicating that the factors listed shall be considered in awarding spousal support and by providing that the courts may consider other matters. The legislature has not, however, indicated how the various factors are to be weighed or given the courts any specific directions for determining what kind of spousal support is "just and equitable." For example, the statute directs the court to consider the duration of the marriage. It does not indicate, however, the significance to be given that factor. The courts must determine, because the legislature has not, whether support payments should be higher or lower upon the dissolution of a lengthy marriage than upon the dissolution of a relatively brief marriage (assuming that all other factors are the same).

We find limited additional guidance to legislative policy in ORS 107.407[2] which indicates that efforts by

---

[1] We have examined in detail 45 decisions of the Court of Appeals involving disputes over spousal support. Of those 45 cases, 36 involve marriages that lasted 15 years or longer, and 18 involved marriages of 25 or more years duration.

[2] "If an individual has paid an amount of money in instalments for more than 10 years for the support of a former spouse under a court decree of annulment or dissolution of marriage that ordered such payment, and when the former spouse has not made a reasonable effort during that period of time to become financially self-supporting and independent of the support provided under the decree, the individual paying the support may petition the court that issued the decree to set aside so much of the decree as may provide for the support of the former spouse."

the supported spouse to become self-supporting and independent of the former spouse are favored. We also note that the 1977 legislature has amended the marriage dissolution statutes in several particulars which are helpful in determining the applicable policy, although they were not in force at the time of the decree which we are considering in this case.

■ One such change is the addition to ORS 107.105(1)(c) of a provision that the court, in determining spousal support, is to consider:

> "The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; * * *" 1977 Or Laws ch 847 § 2.

Although "suitable work" is not defined, we interpret the term, in light of the further provision for enabling the supported spouse to pursue career objectives, as not necessarily limited to work which will provide the supported spouse with an income adequate for minimal self-support.

■ In addition, the courts have been directed, when dividing the parties' property, to:

> "* * * view the contribution of a spouse as a homemaker in the contribution of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage. * * *" 1977 Or Laws ch 847 § 2.

Although this provision is not directly applicable to spousal support awards, it indicates a legislative intent that the homemaker spouse, who is most likely to seek spousal support, be recognized as an economic contributor to the marriage rather than as a passive recipient of economic benefits provided by the breadwinner.[3]

---

[3] These amendments appear to be elaborations of existing legislative policy and are therefore relevant to the questions we are considering, although, because they were not in force at the time of the decree, they are not directly applicable to the case before us.

*Refinement of spousal support policy by the Court of Appeals*

■ An award of spousal support involves two determinations—the appropriate duration of support and the amount to be awarded. In its leading case on the principles governing the duration of spousal support, the Court of Appeals reviewed the statutory standards and its prior decisions and made the following general statement:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife has foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income

_____

There is another amendment of which we are aware, but which we have not relied upon. HB 2471 originally contained the following provision, to be added to the list of considerations in ORS 107.105(1)(c):

"That the *object* of support in dissolutions of marriages of long duration is to insure that both spouses shall be able to enjoy a comparable standard of living; * * *"

HB 3061, as drafted to conform to HB 2471, contained the same provision. After two conference committee reports were received, the provision was deleted from HB 2471, which was enacted as 1977 Or Laws c 847, but not from HB 3061. See 1977 Or Laws c 878 § 2a. In light of the confused legislative history, we will not assume that the quoted provision merely states existing legislative policy.

compared to her standard of living during marriage then, generally speaking, permanent support is appropriate." *Kitson and Kitson,* 17 Or App 648, 655-56, 523 P2d 575, rev. denied (1974).[4]

In *Kitson* there were few assets besides the encumbered family home. The husband's taxable income was approximately $21,000. The wife was given custody of the parties' one minor child. She had not worked since the early days of the 28-year marriage, and had no employment skills. Under those circumstances, the Court of Appeals held that spousal support should not be terminated after three years, as the trial court's decree had provided, but should continue until death or remarriage of the wife.

The passage quoted from *Kitson* focuses on the wife's employability. Under the facts of that case the wife had no source of income other than her own earnings. A more generalized statement of the principle announced there would be: the most significant factor is usually whether the wife's property and potential income, including what she can earn or can become capable of earning, will provide her with a standard of living which is not overly disproportionate to the one she enjoyed during the marriage.

Permanent[5] awards of spousal support were ordered or approved in a number of other cases involving similar factual patterns and on similar

[4] The language employed in *Kitson* assumes that it is the wife who will receive spousal support, if any is allowed. In this opinion we will also speak of the wife as the party whose support is in issue. We do so for the sake of clarity and ease of expression, in light of the fact that the reported cases virtually all conform to that pattern. We are mindful, however, that the statute authorizes support awards to either party to a dissolution proceeding and directs that the same considerations be taken into account, regardless of which party is seeking support.

[5] "Permanent" is a relative term in this context. Spousal support may be modified or terminated at any time upon a showing of a sufficient change of circumstances. We speak of "permanent" support as that which continues indefinitely if no such change is shown as distinct from support awards which, by the terms of the decree, terminate after a specified period unless grounds for extension are shown.

reasoning.[6] In some of these cases the wife was not entirely without employment skills, although in all of them there was a significant discrepancy between the wife's probable future income and an income which would provide the standard of living she had enjoyed during the marriage.

There are some cases in which the Court of Appeals refused to order permanent spousal support, in spite of such a discrepancy, and which we are unable to distinguish on principle.[7] We are not convinced, however, that the Court of Appeals is deciding these cases on an *ad hoc* basis. Rather, it appears that the court is making policy choices of general applicability and is attempting to apply general principles to the cases before it in a consistent manner. In addition to the general principle adopted in *Kitson,* we note that the Court of Appeals has stated and applied a number of general guidelines.

The court has said, in the dissolution of a marriage of substantial duration, that it attempts in such cases to see that the parties separate on as equal a basis as possible. *Lake and Lake,* 22 Or App 195, 538 P2d 97 (1975). It has noted, on the other hand, that where the parties are relatively young and their circumstances are modest, permanent support will not generally be awarded. In such cases, the purpose of the support award is to give the wife time for readjustment and to prepare herself for employment. *Fulwiler and Fulwiler,* 22 Or App 311, 538 P2d 958 (1975).

[6] *Kent and Kent,* 28 Or App 107, 558 P2d 1262 (1977); *Kennedy and Kennedy,* 27 Or App 203, 555 P2d 803 (1976); *Jackson and Jackson,* 26 Or App 89, 551 P2d 1315 (1976); *Whitley and Whitley,* 25 Or App 651, 550 P2d 760, *rev. denied* (1976); *Cupp and Cupp,* 22 Or App 478, 539 P2d 1120 (1975); *Hinsdale and Hinsdale,* 20 Or App 638, 532 P2d 1137, *rev. denied* (1975); *Jensen and Jensen,* 19 Or App 875, 529 P2d 412, *remanded for correction on other grounds* 271 Or 619, 533 P2d 794 (1975); *Halford and Halford,* 19 Or App 508, 528 P2d 119 (1974); *Dodge and Dodge,* 19 Or App 363, 527 P2d 750 (1974); *Kolling and Kolling,* 18 Or App 200, 524 P2d 573 (1974); *Bates and Bates,* 17 Or App 641, 523 P2d 579 (1974).

[7] *See, e.g., Churchill and Churchill,* 28 Or App 271, 558 P2d 1305 (1977); *Wold and Wold,* 22 Or App 566, 540 P2d 382 (1975); *Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975); *Aasum and Aasum,* 17 Or App 658, 523 P2d 581 (1974).

Special circumstances have been taken into account in a principled fashion. For example, the court has given consideration, in setting the amount and duration of spousal support, to the fact that the wife has made a direct contribution to the husband's education or to his professional or occupational success. *Wilson and Wilson,* 10 Or App 162, 499 P2d 828 (1972). And where the wife suffers from health problems that reduce her earning capacity or increase the cost of her support, the court has rejected the argument that the burden of such continuing problems should be borne by society rather than by the former spouse. *Gunderson and Gunderson,* 26 Or App 115, 551 P2d 1317 (1976) (alcoholism); *Creighton and Creighton,* 25 Or App 159, 548 P2d 995 (1976) (mental illness); *Kolling and Kolling,* 18 Or App 200, 524 P2d 573 (1974) (physical illness).

The husband has argued, in the present case, that the Court of Appeals acted improperly in *Kitson,* and the cases which follow it, in comparing the wife's probable income with the standard of living she enjoyed during the marriage, and that the court has been attempting, in those cases, to provide the wife with that standard at the husband's expense and without proper consideration of his financial situation and other factors specified in the statute. These arguments are not well taken.

We find no evidence in the Court of Appeals' opinions that it has required the husband to provide his former wife with support sufficient to enable her to maintain an unchanged standard of living. On the contrary, the court has observed that the same standard of living usually cannot be maintained.[8] The principle of *Kitson,* that the most significant factor usually is whether the wife's income can provide a standard of living not overly disproportionate to that she enjoyed during the marriage, is addressed not to the amount of spousal support but to its duration.

---

[8] *Miller and Miller, supra,* note 7 at 257; *Huston and Huston,* 21 Or App 332, 335, 534 P2d 1166, *rev. denied* (1975).

In *Maley and Maley,* 28 Or App 597, 600-601, 560 P2d 309 (1977), reducing the amount of permanent spousal support, the court observed that the supporting spouse, where children are not involved, ought generally to be allowed to retain more than half of his net income. In fact, in reviewing the Court of Appeals' opinions, we have found only two cases in which child support and spousal support combined appear to exceed half of the husband's net income.[9] Most often, as nearly as we can determine from the figures in the reported cases, permanent spousal support operates to lessen, but not to eliminate, substantial financial inequality between the spouses, taking into account their needs and those of their dependents and their probable incomes from all sources.

### Summary of applicable policy

█ In response to our request for a guideline which this court could furnish for the resolution of support disputes, the husband, on oral argument, suggested the following:

> "If the dependent spouse is awarded the family home, and the minor children in his or her custody are being supported at a reasonable level by the supporting spouse, and the dependent spouse is employed at a job commensurate with his or her skills and abilities, then a reasonable standard of living is made available to that dependent spouse and if spousal support is appropriate at all, it should be limited to a short adjustment period of one to two years."

We cannot approve this general statement as a guideline to be applied to marriages of long duration. We will not ignore the fact that, at least until recent years, young women entering marriage were led to believe—if not expressly by their husbands-to-be, certainly implicitly by the entire culture in which they

---

[9] *Fulweiler and Fulweiler,* 22 Or App 311, 538 P2d 958 (1975); *Tyerman and Tyerman,* 21 Or App 296, 534 P2d 998 (1975). We cannot be certain that there have not been other such awards, because in some cases gross rather than net income is reported, and in others the husband's income is not given in the opinion.

had come to maturity—that they need not develop any special skills or abilities beyond those necessary to homemaking and child care, because their husbands, if they married, would provide their financial support and security. We cannot hold that women who relied on that assurance, regardless of whether they sacrificed any specific career plans of their own when they married, must as a matter of principle be limited to the standard of living they can provide for themselves if "employed at a job commensurate with [their] skills and abilities." The marriage itself may well have prevented the development of those skills and abilities.

The statutory standards do not require such an approach. The legislature has directed the courts to consider, among other things, the wife's earning capacity and financial condition. For those factors to be meaningfully considered, they must be compared to something. The Court of Appeals has chosen to compare them to the standard of living during the marriage and to the husband's income potential. Nothing in the statutory scheme forbids that approach or directs that the comparison be made instead to the minimum amount necessary to provide food, shelter, and other basic necessities.

The legislature has given the courts only limited guidance in this area. The expressed legislative policy is that spousal support may be awarded in an amount, and for a period of time, that is "just and equitable," and that in making this determination the factors listed in ORS 107.105(1)(c) are relevant. It is significant that the legislature chose to express the standard in terms of what is just and equitable rather than solely in terms of need. We conclude, in light of this choice and in light of the statutory direction to consider such matters as the duration of the marriage and the parties' "conditions," as well as purely financial matters, that the purpose of spousal support is not solely to prevent the supported spouse from becoming a public charge. The courts must attempt to do justice

[ 352 ]

between the parties as well as provide the supported spouse with a minimally adequate living. The legislature has also indicated, however, its disapproval of sole reliance on spousal support by providing for its termination if the supported spouse has not, during a period of ten years, made reasonable attempts to become self-supporting. We conclude from this provision that the legislature has not deemed it just and equitable for one former spouse to look to the other for indefinite support if self-support at a reasonable level is possible. The 1977 amendment to ORS 107.105(1)(c), listing the need for training for suitable work or career objectives as a consideration in determining support matters, is additional evidence of that policy.

■ What the courts must attempt, then, is to award spousal support, if it is appropriate, on terms that are equitable between the parties that take into account need and ability to pay and that further the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.

■■ We further conclude that, although each case must be considered on its own facts, it is proper to develop general principles, in addition to and consistent with those provided by the legislature, to the end that similar cases will be treated similarly. We approve the Court of Appeals' attempts to do so. In particular, we approve the general approach adopted in *Kitson* to determine the duration of spousal support, and the attempt, in determining the amount of that support, to reduce substantial financial inequality between the parties to marriages of long duration.

■ It is proper and desirable, however, where the circumstances permit, to tailor the financial provisions of a dissolution decree in a way which will provide the wife an opportunity to increase her earning capacity and thus to eliminate the need for permanent support or to reduce the amount required. This approach may require a higher level of support

[ 353 ]

payments at first while the wife acquires training or experience, even though she already has or is capable of earning an income minimally adequate for her support.

*Effect of remarriage on spousal support*

We turn now to the second question upon which we requested argument: whether spousal support awards should routinely provide that the support payments will terminate upon the remarriage of the supported spouse. We hold that they should not.

The only statute which is relevant is that which gives the court the authority to "set aside, alter, or modify" the support portion of the decree upon motion of either party. ORS 107.135(1)(a). That authority may be exercised when a substantial change in circumstances since the original decree has been shown.[10] There is no statutory provision for automatic termination of spousal support under any circumstances.

In other jurisdictions where the matter is not governed by statute, there is a division of authority over whether remarriage of the supported spouse automatically terminates the support obligation or is simply a change in circumstances which may justify such a termination upon proper application to the court. *See* Annot., Alimony as Affected by Wife's Remarriage, In Absence of Controlling Specific Statute, 48 ALR2d 270 (1956). We have consistently taken the latter position. *Nelson v. Nelson,* 181 Or 494, 499, 182 P2d 416 (1947); *Phy v. Phy,* 116 Or 31, 36, 236 P 751, 240 P 237 (1925); *Brandt v. Brandt,* 40 Or 477, 487, 67 P 508 (1902).

Although this court has expressed the opinion that it was against public policy to permit a woman to look for her support to two different men,[11] that policy has

---

[10] *Abraham v. Abraham,* 248 Or 163, 432 P2d 797 (1967); *Case v. Case,* 18 Or App 637, 638, 526 P2d 467 (1974).

[11] *Nelson v. Nelson,* 181 Or 494, 500, 182 P2d 416 (1947); *Warrington v. Warrington,* 160 Or 77, 82, 83 P2d 479 (1938); *Phy v. Phy,* 116 Or 31, 47-48, 236 P 751, 240 P 237 (1925); *Brandt v. Brandt,* 40 Or 477, 486-87, 67 P 508 (1902).

never been held in this state to operate automatically without regard to the particular circumstances. The cases announcing the position that it does not were decided at a time when the husband was considered to have an absolute unilateral obligation to support his wife. We would not now hold otherwise, when legal duties of spousal support are mutual.[12] Public policy does not require that a woman whose first marriage has been dissolved be free to remarry only if her new husband is able to support her.

If remarriage by the supported spouse is not, as a matter of law, grounds for automatic termination of spousal support, we cannot approve the general practice of inserting provisions to that effect in support decrees as a matter of routine. Unless there is reason, at the time the decree is entered, to predict a remarriage which will substantially change the circumstances relevant to the support award, the question of the effect of remarriage upon a support decree should await the event and proper application for modification of the decree. As we said, in another context, in *Picker v. Vollenhover,* 206 Or 45, 72, 290 P2d 789 (1955):

> "* * * At the time of divorce the court should not lay down rules for the future whose propriety would depend on circumstances materially different from those shown by the evidence and which can not reasonably be predicted from the evidence. In particular, it should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of earnings of the defendant. The original decree retains its vitality unless and until the court on proper showing finds that on all of the evidence presented a change in support is required. A provision [for changes in the amount of child support based on a sliding scale tied to defendant's future earnings] is not only based on speculation as to future events, —it is also based on the assumption that a change in one only of the many circumstances which may be relevant to the issue shall be conclusive."

---

[12] ORS 108.110 (the right to apply for an order of support has been available to both spouses since 1975. 1975 Oregon Laws, ch 140, § 1).

These considerations, stated above with reference to child support decrees, apply with equal force to awards of spousal support.

We hold, then, that it is improper for the dissolution decree to provide in advance for automatic termination of spousal support upon remarriage of the supported spouse unless there is some reason disclosed by the evidence for such a provision in the specific case.[12a]

*Spousal support in the present case*

We now turn to the application of what we have said above to the specific facts of this case.

The parties to this proceeding were married for 23 years and were both in their mid-forties at the time of the dissolution. Both were in good health. Custody of their two children, ages 13 and 16 at the time of the decree, was awarded to the wife. The husband holds a doctorate in economics and is a full professor at the University of Oregon. His net monthly income averages about $1500 a month if he teaches summer school and about $1200 a month if he does not. He is not guaranteed the opportunity to teach summer school and, in fact, he prefers not to do so. He testified that it is important to his career to have his summers free for research and writing.

The wife worked full time during the early years of the marriage while the husband obtained his education. For most of the past 15 years she has devoted herself primarily to homemaking activities, although she has taken a variety of part-time and temporary jobs during that period. At the time of the decree she was employed full time in a clerical position. Her net monthly income was approximately $320. A vocational

---

[12a] This holding, of course, does not apply to a case in which there is either a valid property settlement contract or a valid prenuptial contract which provides for automatic termination of spousal support upon remarriage of the supported spouse.

In any decree which provides for spousal support, the decree should enjoin upon the supported spouse a duty forthwith to advise the other party if and when the supported spouse remarries.

[ 356 ]

expert called by the husband testified that her skills and experience qualified her for employment as an executive secretary at a gross salary of $600 to $800 a month. She testified, however, that her actual experience as a secretary to executives was more than 15 years old and that she had been unable to find a better position than that she held at the time of the decree. She also testified that she does not wish to work as a secretary indefinitely. She outlined to the trial court her plan to obtain a master's degree in business administration, which will require a total of four years of college work and which would enable her, according to her testimony, to earn something over $10,000 a year.

The parties, during their marriage, accumulated few assets besides their home, in which they had an equity valued at $12,670 to $15,100 and the husband's equity in his retirement plan, amounting to approximately $13,400. The trial court awarded the home to the wife and the retirement equity to the husband, thus accomplishing an approximately equal division of the accumulated assets in an appropriate manner. The wife was also awarded child support in the amount of $250 a month for each child and spousal support of $150 a month for five years.

Upon appeal by the wife, the spousal support award was modified to provide for payments of $200 until death or her remarriage. Judge Johnson dissented on the grounds that the spousal support would be inadequate after the child support payments ended and that the decree should not provide for automatic termination of support payments upon the wife's remarriage. We granted the husband's petition for review.

The wife has urged us to adopt the approach suggested by the dissent in the Court of Appeals. In effect, that approach would treat the dissolution of a marriage like the dissolution of a business partnership and would also, in cases like this one, consider the husband's earning capacity, to the development of

which both parties contributed, as a joint asset to be allocated between them. The principles we have approved in this opinion will support similar results in many cases. We do not, however, approve the allocation of future earnings on principles applicable to property rights. It is proper to recognize each party's contribution, whether financial or in the form of services, to the economic aspects of the marriage. But it is also important to retain flexibility to deal with the parties as the court finds them at the time of the dissolution. The marital history should not be allowed to overshadow present circumstances.

In light of the great disparity between the parties' earning capacities in this case, there are two general approaches by which we might arrive at a spousal support award which would be just and equitable between the parties. The first possibility is to structure the award in such a way that the spousal support payments, together with child support and the wife's present earning capacity, would enable her to enjoy a standard of living not overly disproportionate to that which the husband can maintain for himself. This approach would call for relatively lower spousal support payments during the years when the wife is receiving substantial child support payments and a somewhat higher permanent award in later years after the child support has terminated.

The second approach is to award proportionately higher spousal support at the outset so that the wife will not have to work full time to support herself and the children. This will permit her to complete the educational program which she has planned and will permit a somewhat lower level of permanent support later. The wife outlined a four-year plan of schooling which should significantly increase her earning capacity.

Under the circumstances of this case, taking into account the expressed legislative policy that favors efforts to reduce the dependence of one spouse on the

other over the long run, we hold that the second approach is the preferable one here.

While the support payments for both children last, the husband's total support obligation of $700 a month, the level set by the Court of Appeals, is a heavy one. He may well find it necessary to obtain summer employment in order to meet it and still provide comfortably for himself. On the other hand, $700 a month is probably not enough to enable the wife to support herself and two teenage children and to pursue a college education. She will likely find it necessary to work part time in order to carry out her plans. Spousal support during this period in the amount set by the Court of Appeals, $200 a month, presents some hardships for both parties, but we are unable to arrive at a more satisfactory figure. We approve the award of spousal support in the amount of $200 a month until the older child reaches 18.

Support payments for the older child will end before the wife has completed the four years of schooling which are necessary to her master's degree program. At that time spousal support should be increased in order to permit her to complete her training. We consider a temporary increase to $300 a month at that time to be appropriate.

By the time support payments for the younger child end, the wife will have had time to complete her contemplated schooling and to find a position in her field. At that time spousal support payments should be substantially reduced. Taking into account the wife's predictions of her eventual earning capacity and the fact that she has been awarded the family home (upon which the payments are quite low compared to today's normal housing costs), we believe that permanent spousal support payments of $125 a month will be appropriate. This will not put the parties on an equal

footing financially, but will permit both of them some flexibility in their personal financial arrangements.[13]

The decree of the circuit court should be modified in accordance with this opinion.

Modified and remanded. Costs to neither party.

---

[13] Our modifications of the decree are based on evidence in the record as to probable future events and circumstances. Should the circumstances change, either party may, of course, apply for a subsequent modification.