Argued November 27, 1978, affirmed February 6, 1979

## In the Matter of the Marriage of
## SHERMAN, *Respondent—Cross-Appellant,*
## *and*
## SHERMAN, *Appellant.*
## (No. 51170, CA 11633)

590 P2d 256

Robert G. Danielson, Sweet Home, argued the cause and filed the brief for appellant.

Ronald L. Gould, Coos Bay, argued the cause for respondent—cross-appellant. With him on the briefs were Malcolm J. Corrigall and McNutt, Gant & Ormsbee, Coos Bay.

Before Schwab, Chief Judge, and Thornton, and Buttler, Judges.

THORNTON, J.

Buttler, J., dissenting opinion.

## THORNTON, J.

Husband appeals from a dissolution decree, contending that the trial court's division of the marital assets was unjust and improper in the circumstances. ORS 107.105(1)(e).

Husband and wife, ages 43 and 40, respectively, were wed in July 1954 and have two emancipated children. The parties' principal assets are their family home, with equity of approximately $25,000, and two land sale contracts, with outstanding balances of approximately $112,000 at the time of trial. One land sale contract of approximately $19,000 relates to a small tavern that the parties operated jointly. The second contract, valued at approximately $93,000, relates to the sale of a share of a large ranch property in which the parties had a part ownership through a corporation largely financed by wife's parents.[1]

The trial court awarded husband the family home, and the remaining balance on the sale of the tavern. Wife was awarded the balance of the parties' interest in the sale of the ranch property. The remaining marital assets were evenly divided.[2]

---

[1] Although the corporation was capitalized by wife's parents, husband and wife contributed considerable labor to the corporation in return for *de minimis* salaries. It is apparent that remuneration for their efforts was contemplated to be their 37 percent share in the corporation. We do not view the parties' share in the corporation to be a "gift" from wife's parents entitling her to greater consideration in the distribution of the asset. Even if it were a "gift," of course, it is still an asset of the marriage to be treated like other assets. *Cf., Dietz and Dietz,* 271 Or 445, 533 P2d 783 (1975); *Hardwick and Hardwick,* 29 Or App 857, 565 P2d 405 (1977).

[2] Husband assigns as error the trial court's consideration of a list of personal properties owned by the parties which was not admitted into evidence. The extent of husband's argument is as follows:

"* * * Wife's counsel must have submitted to the trial judge a detailed list of the household and other personal property items without hearing afforded to husband. Without some hearing or participation by husband, how can it be held that the personal property items were fairly divided?"

Husband's rhetorical question does not amount to a contention that the personal properties were unfairly divided. Accordingly, we do not consider the assignment.

[ 323 ]

In order to determine the equity of a division of property such that husband received $44,000 and wife received $93,000, we must analyze the situation of the parties. Husband is in good health. He has only a seventh grade education. He earns $5 per hour doing physical labor. He often is able to work overtime, and in the month just preceding the dissolution grossed over $1,000. Wife, also in good health, is employed with a local community college, in a clerical capacity, earning a gross of $524 per month. She is a permanent employe and, accordingly, entitled to a benefit package including health insurance, retirement and tuition-free education at the college up to six units per quarter. She is currently enrolled in the education program, taking courses in accounting, business management and secretarial skills.

■■ Although the parties' property is obviously disparately divided, it is clear that the parties also have disparate earning capacities. While this is certainly not a case in which husband's earning capacity has been enhanced due to wife's efforts, *see, Grove and Grove,* 280 Or 341, 571 P2d 477, 280 Or 769, 572 P2d 1320 (1977); *Wilson v. Wilson,* 10 Or App 162, 499 P2d 828 (1972), we cannot say that wife did not forego improving her own employable skills in order to carry out her role as homemaker. Accordingly, we are of the opinion that the property should be as evenly divided as possible, bearing in mind the equally important objective of having the parties separate on as equal a footing as possible. *Lake and Lake,* 22 Or App 195, 538 P2d 97 (1975). This we believe the trial court did.

Although wife received the land sale contract valued at $93,000, plus interest, it is payable in yearly installments, after deducting encumbrances and escrow fees, of approximately $8,500.[3] When added to her annual salary of about $7,000, it is apparent that she has an income only slightly greater than husband's approximate income of $12,000 annual salary

[3]The contract will be paid off in approximately eight more years.

and $3,000 annual proceeds from sale of the tavern. That imbalance is adequately offset by husband's retention of the family home.

We are dealing here with a 24-year marriage. Were we to give the husband one-half the balance due on the ranch property, as the husband strenuously argues for, we would of necessity be disposed to allow the wife spousal support, including some financial provision to assist her in completing her education and training to upgrade her job skills, as well as to become established in such employment. This would leave the husband in the same position financially as the court's decree left him. It would appear that the trial judge took this into consideration in arriving at his decision to give the wife the total sum due on the ranch contract, to give the husband the family home and the balance due on the tavern contract, but making no provision for any spousal support to the wife as would normally be indicated for a 24-year marriage. *See, Kitson v. Kitson,* 17 Or App 648, 523 P2d 575 (1974).

Wife cross-appeals, contending that she should have been awarded attorney's fees. In light of the obviously equal status of the parties, we see no reason that one should pay for the other's legal representation.

Affirmed. No costs to either party.

**BUTTLER, J.,** dissenting.

While I agree, generally, with many of the propositions stated by the majority, I do not agree that the unequal distribution of marital assets is justified by "disparate earning *capacities.*" Husband is 43-years-old, has a seventh-grade education and has made his living by manual labor; at the time of the decree he was earning $5 per hour, which, with overtime, permitted him to gross as much at $1000 per month. Wife is 40-years-old, is presently employed with a community college earning $524 per month, and in addition receives health insurance, retirement benefits and

tuition-free education at the college up to six units per quarter.

The record, therefore, suggests to me that while the husband's current earnings represent his earning *capacity,* wife's present earnings do not represent her earning capacity. I would, therefore, divide the marital assets equally, and require husband to pay some spousal support for a limited period of time to permit wife time to continue the education program in which she is now enrolled (free) in accounting, business management and secretarial skills.

With this objective in mind, I would award husband $24,500 of the $93,000 payable as of the time of the decree under the contract relating to the sale of the ranch property, with each payment made thereunder distributed proportionately to husband and wife. With this disposition, each of the parties would receive approximately $68,500 in marital assets. I would further modify the decree to require husband to pay wife the sum of $200 per month in spousal support for a period of two years from the date of the decree.