Argued and submitted February 13, affirmed as modified;
remanded with instructions April 14, 1980

In the Matter of the Marriage of
FAIRES,
*Appellant,*
*and*
FAIRES,
*Respondent.*

(No. 78-10-231, CA 15428)

609 P2d 871

Robert D. Herndon, Gladstone, argued the cause for appellant. With him on the brief was Ringle & Herndon, P.C. Gladstone.

No appearance for respondent.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

JOSEPH, P.J.

*Schwab, C.J., *vice* Lee, J., deceased.

**JOSEPH, P.J.**

In this dissolution proceeding wife appeals and assigns as error the refusal of the trial court to grant her request for $300 per month permanent spousal support.

The parties were married for 26 years. At the time of trial, both were in good health; two of their three children resided at home. Of the two, one is over 18 years old and is employed full-time; the other, 17, is in his senior year in high school. Husband, age 48, works as an elevator installer earning $14 per hour. Wife, age 45, had at time of trial recently begun work as a harnessmaker in a factory at $3.90 per hour. Wife has no higher education or specialized training. During the marriage she worked sporadically as a cafeteria worker, chicken debeaker on a farm and teletype operator, but for 15 years out of the 26 she was exclusively a homemaker. She also handled the family finances.

The trial judge ordered the family home, a small farm, to be sold forthwith and the proceeds evenly divided. Husband was ordered to pay $200 per month child support for the minor son, age 17, until he has reached 18 and is not attending college or vocational school. In other respects the trial court made an approximately equal division of the assets of the parties, except for the award to wife of

> "any savings accounts later discovered that the parties have accumulated over the years, either in the parties' names or in the names of any other persons to whom moneys have been forwarded for investment purposes."

In her petition for dissolution and in testimony in a *pendente lite* hearing held in November, 1978, wife represented to the court as an asset of the marriage a savings account in an Oregon bank in her name consisting of $15,000 saved from husband's earnings. At the trial, however, wife divulged for the first time that every month for the last 10 years of the marriage she

had, unbeknownst to her husband, sent from $100 to $150, or more, to a friend in Indiana to keep for wife's eventual use. In her estimate, the funds so accumulated amounted to approximately $15,000. She said she had accounted to her husband orally for those funds from time to time and once by displaying a savings book that she forged for that purpose. She could not produce the false passbook at trial; she stated that she looked for it, that it had disappeared and that she had never possessed a genuine record of the funds. She also testified that she had been unable to get in touch with the friend in Indiana, that the phone there had been disconnected and that she was therefore unable to retrieve the money.

At the close of trial, the judge stated:

"Necessarily, and more so in this case I think than in lots of cases I have tried—it's necessary that the Court determine the credibility of the witnesses. And I want to state right at the outset that the credibility of the petitioner is in doubt as far as the Court is concerned at this time. She has admitted that she lied at the prior hearing before this Court, and also that she misstated the facts in her petition. And by reason of that, there is no question in my mind that I have to doubt her credibility.

"* * * * *

"I'm not going to award any support other than what I have mentioned at this point to Mrs. Faires. I feel that she's already had whatever family funds in the disposal of family funds *[sic]* more than her share at this point. If there are any bonds which are part of the family assets, I will order that each shall share half and half."

The following exchange then occurred between wife's attorney and the trial judge:

"MR. RINGLE: Your Honor, with regard to this money given to this person in Indiana, this savings —

"THE COURT: That —

"MR. RINGLE: —I just wondered if there should be any —

"THE COURT: I just said that would be in lieu of any support that she will be entitled to. So I guess that that would be the property of Mrs. Faires.

"If I find out that there are facts different than what she's testified to, I'm going to turn the matter over to the District Attorney as far as any prosecution for perjury. I'm not saying she did. I'm saying that if I find the facts different than what she's testified to, then I am going to submit the matter to the District Attorney."

The initial question is whether the savings account should be included in the assets of the marriage. Wife admitted in her petition and in earlier testimony that a savings account of $15,000, a family asset, existed and was within her control. At time of trial, however, she asserted instead that she had regularly been sending payments to someone to accummulate for her. When asked how she sent the money, she stated that she put cash in envelopes and sent them through the mail. Other than her testimony, there was no evidence that the money was now unretrievable. The trial judge plainly disbelieved her, and so do we. The "savings account" was an asset of the marriage, even though its value was indefinite.

The next issue is whether it was equitable to award the savings account to wife in lieu of spousal support. ORS 107.105(1)[1] permits but does not require an

---

[1]

"Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"* * * * *

"(c) For the support of a party, in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. The court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party. If requested by either party, the court shall make and set forth in its decree the findings of fact upon which its award or denial of support was based. In making such support order, the court shall consider the following matters:

award of spousal support. Nonetheless, in marriages of long duration, where the incomes and earning capacities of the parties are disparate, support from one party to the dissolution is an appropriate measure to afford the other a standard of living "not overly disproportionate" to that enjoyed during the marriage. *Grove and Grove,* 280 Or 341, 358, 571 P2d 477 (1977). Awarding the savings account to wife might be considered the equivalent of support for some period of time and would not be an unfair disposition to that extent. But the failure to award any spousal support *per se* is nonetheless unfair, since wife might prove unable to increase her earning potential sufficiently in that period of time. If not initially granted, spousal support cannot be awarded later. *Johnson v. Johnson,* 245 Or 10, 14, 419 P2d 28 (1966). Moreover, the denial of spousal support here appears to be based, at least in part, on censure of wife's dishonest conduct and may be improperly punitive.

A more equitable approach in this case would be to dispose of the savings account as part of the other assets and to consider the support issue separately. That would require the decree to be modified so that husband's share in the value of the "savings account" be awarded him. However, we have only wife's word as

"(A)   The duration of the marriage;

"(B)   The ages of the parties;

"(C)   Their health and conditions;

"(D)   Their work experience and earning capacities;

"(E)   Their financial conditions, resources and property rights;

"(F)   The provisions of the decree relating to custody of the minor children of the parties;

"(G)   The ages, health and dependency conditions of the children of the parties, or either of them;

"(H)   The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I)   Such other matters as the court shall deem relevant."

to the amount and location of the fund, and there is no reason to believe she was telling the truth about it in any respect. To award him part of the fund without at the same time providing him some assurance of enjoying the award would be ludicrous. Given wife's course of conduct, all of the burden ought to be on her to clean her hands, but we cannot say that she is totally disentitled to any support in a case that is otherwise well within the reasoning in *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974), and the scope of *Grove and Grove, supra.* The problem is the fashioning of a remedy, but we have first to determine the support issue.

In making an award of spousal support in cases of this kind, the court should attempt "to reduce substantial financial inequality" between the parties to marriages of long duration. *Grove and Grove, supra* at 353. At the same time,

> "[i]t is proper and desirable, however, where the circumstances permit, to tailor the financial provisions of a dissolution decree in a way which will provide the wife an opportunity to increase her earning capacity and thus to eliminate the need for permanent support or to reduce the amount required. This approach may require a higher level of support payments at first while the wife acquires training or experience, even though she already has or is capable of earning an income minimally adequate for her support." *Grove and Grove, supra* at 353-54.

Here, wife's gross monthly income at time of trial was approximately $650; her net, $450. She had not yet claimed her son as a dependent for tax withholding purposes. She submitted to the court that to meet her monthly expenses of $985 would require about $300 monthly in spousal support. Husband's monthly income at time of trial was about $2,400; his net, $1,400. In addition to his child support obligation of $200 per month, he claimed living expenses of $1,100 monthly. These figures were reasonably firm in the trial evidence.

We conclude that permanent spousal support is appropriate and that $200 per month would be an equitable award. We note that wife had just begun her job at time of trial, and her earnings will presumably increase with time and experience. In the petition she expressed the desire for further education to gain entry into the field of data processing. It is doubtful, however, that wife, at age 45, with her work history, will be able to achieve that goal or support herself at a level not overly disproportionate from that enjoyed during her marriage, particularly after child support is terminated. There should be some incentive for her to achieve financial independence from husband, and the award we are making indubitably leaves her with the need to help herself.

We return now to the "savings account." Half of it belongs to husband, but wife's conduct has made his enjoyment of that presently impossible. It is not, however, unlikely that she has it within her ability, given the proper incentive, to find, produce and account for the fund, which we find to be approximately $15,000 as of the date of the court's oral pronouncement of its decision, June 14, 1979. We remand this matter to the trial court for the entry of an amended decree to include the following:

1. Reconfirming the original decree to the extent it is not modified in the matters dealt with in this opinion.

2. Awarding wife $200 per month permanent spousal support.

3. Awarding husband one-half of the "bank account."

4. Giving husband a charge against his support obligation in the sum of $200 per month, said charge to continue until it equals the total of $7,500 plus simple interest on the declining balance at nine percent per annum from June 14, 1979.

Affirmed as modified; remanded with instructions; costs to respondent.