Argued and submitted November 9, 1995, remanded with instructions in part; otherwise affirmed May 15, 1996

In the Matter of the Marriage of

Ernest H. KAHLE, Jr.,
aka Ernie H. Kahle, Jr.,
*Respondent,*

*and*

Judith J. KAHLE,
*Appellant.*

(94-DO-0140-DS; CA A86794)

917 P2d 41

John A. Hudson argued the cause and filed the brief for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Wife appeals a judgment of dissolution, challenging the award of spousal support and division of marital assets as insufficient. We review *de novo*, ORS 107.405, ORS 19.125(3), remand for modification of the spousal support award, and otherwise affirm.

Husband and wife, who are both in their early 40s, were married for 21 years. Since the second year of their marriage, husband has worked as the general manager for a large ranching business, and, until their separation, the couple lived on one of husband's employer's ranches, situated along the North Umpqua River near Glide.

In addition to a salary and an annual bonus based on ranch profitability, totaling $36,897 in 1993 (and estimated to be $35,505 for 1994), husband's compensation includes substantial noncash benefits. In particular, husband's employer provides contributions to a retirement fund,[1] health and life insurance, use of a 3,400-square-foot ranch house as a home, utilities, meat, personal use of a company vehicle, and fuel. The trial court estimated the value of those noncash benefits to be approximately $23,500 a year.[2] The ranch house and surrounding acreage enhanced the couple's lifestyle considerably: Wife gardened and canned, putting up nearly 500 quarts of fruit and produce a year, and she housed and rode three horses on the ranch and used the ranch vehicles to transport them.

At the time of dissolution, wife worked 16 to 20 hours a week as a medical office manager and receptionist, earning $10 to $15 per hour, and performed most of the couple's homemaking tasks. Both parties agree that she also

---

[1] In 1993, husband's employer contributed $2,179 toward a 401(k) fund.

[2] The trial court found that the values of the noncash benefits are as follows:

"1. Health insurance (medical/dental/optical): $384 monthly

"2. Personal use of ranch home and 5 acres: $1,200 monthly

"3. Utilities * * *: $96 monthly

"4. Meat (beef and lamb): $50 monthly

"5. Fuel used for personal vehicle: $129 monthly

"6. Personal use of company vehicle: $100 per month."

contributed substantially to husband's success as a ranch manager. She helped husband with ranch chores, participated in lambing and roundups, and hosted social and charitable events to promote community good will toward the ranch and the lamb industry. She established a solid relationship with husband's employer and his family by leading them on trail rides, hosting events for them, and otherwise ensuring their comfort on their visits to the ranch.

In 1992, wife was diagnosed with breast cancer and underwent surgery. Although her prognosis is very good, with a 90 to 95 percent chance that the cancer will not re-occur in the next 10 years, she requires additional reconstructive surgery and preventive treatment. She will continue to have medical insurance, provided by husband's insurance provider, for three years following the dissolution, but afterwards she will be largely uninsurable, except under the Oregon Medical Insurance Pool, which does not provide coverage for reconstructive surgery.

The trial court awarded wife spousal support of $500 per month for six years. It based its award on

> "[wife's] uncertain future medical condition, her anticipated medical expenses, the need to complete reconstructive surgery and the uncertainty of her medical insurance coverage."

---

[3] The property division was as follows:

|  | Husband | Wife |
|---|---|---|
| Real property-1 lot (no intent to sell) | 45,000 | |
| Real property-1 lot minus tax consequences due to intent to sell | | 29,975 |
| Putnam Investments | | 12,557 |
| Shearson Investment Account ($67,574) | 9,330 | 58,244 |
| GT Global Investment Account | | 6,935 |
| Sun Studs 401(k) | 45,158 | |
| TOC Retirement Account | 13,284 | |
| Putnam IRA | 5,120 | |
| Shearson IRA | 1,000 | |
| (Husband's) 1993 net bonus | 5,751 | 5,751 |
| (Wife's) 1993 net bonus | | 848 |
| Personal Property | 3,755 | 3,755 |
| Investments Account withdrawal by (wife) | | 11,800 |
| 1988 Honda Accord | | 5,787 |
| Tax obligations (1/2 credit) | (1,286) | |
| Total | $132,463.50 | $132,463.50 |

The court also divided the marital property,[3] awarding each party assets with a value of $132,463.50.[4]

On appeal, wife asserts that the award of spousal support was inadequate for an indefinite term, and seeks support of $2,000 per month. In the alternative, she seeks a greater share of the parties' assets. Because we agree that wife is entitled to a greater award of spousal support, we do not reach her alternative asserted entitlement to a "long half" of the marital property.

■ ■   In setting the appropriate amount and duration of spousal support, we consider both wife's need for support and husband's ability to pay, with "the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship." *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993) (citing *Grove and Grove*, 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977)). We evaluate wife's need for support using the criteria enumerated in ORS 107.105(1)(d),[5] and conclude that wife is entitled to a greater

---

[4] The parties contest the trial court's valuation of certain assets. In response, we note only that the trial court valued the parcel of real property assigned to husband at its market value of $45,000, and the real property assigned to wife at $29,975, because she expressed the intention of selling her parcel, whereas husband expressed the opposite intention. The reduction in value reflects capital gains tax as well as selling costs. Husband disputed this valuation discrepancy, but the court "shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties." ORS 107.105(1)(f).

[5] Under ORS 107.105(1)(d), the court shall consider a variety of factors, including:

"(A) The length of the marriage;

"(B) The age and physical and mental health of the parties;

"(C) The contribution by one spouse to the education, training and earning power of the other spouse;

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"* * * * *

"(J) Costs of health care to a party;

"(K) The standard of living established during the marriage;

"* * * * *

award of support than that awarded by the trial court. In particular, we believe that wife's significant contributions to husband's career over a long-term marriage, ORS 107.105 (1)(d)(C), ORS 107.105(1)(d)(A); her substantial medical treatment and insurance needs, including the reasonably anticipated costs of reconstructive surgery, ORS 107.105-(1)(d)(B), ORS 107.105(1)(d)(J); and her inability, even working full time,[6] to "achieve an economic standard of living not overly disproportionate" to the couple's lifestyle, ORS 107.105(1)(d)(M), support an award materially greater than the trial court allowed.

■ Husband argues, however, that his earning capacity, ORS 107.105(1)(d)(D), strongly militates against a greater award of spousal support. In particular, he asserts that, because such a substantial portion of his compensation consists of noncash benefits, he is unable, as a practical matter, to pay more than $500 a month in support. We disagree for two related reasons. First, ORS 107.105(1)(d)(D) refers to "earning capacity," not "cash flow." Second, husband's asserted lack of liquidity notwithstanding, his receipt of such noncash compensation as housing, food, and transportation makes available cash that would otherwise be applied toward such expenses. Accordingly, we conclude that the spousal support award should be modified to award wife $1,000 per month for six years from October 1, 1994.

We have reviewed wife's remaining assignments of error and reject them without further discussion.

Remanded with instructions to enter modified judgment awarding wife spousal support of $1,000 per month for six years from October 1, 1994; otherwise affirmed. Costs to wife.

---

"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

[6] The trial court found that, barring future medical problems, wife would be able to work full time, and estimated her maximum income to be $2,598 per month, out of which she must pay substantial medical costs, as well as housing for herself and her animals.