# In the Matter of the Marriage of
## McLEAN, *Petitioner-Appellant,*
### *and*
## McLEAN, *Respondent-Respondent.*
### (No. 22127, CA10897)

585 P2d 750

Neil R. Bryant, Bend, argued the cause for appellant. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Ronald L. Marceau, Bend, argued the cause for respondent. With him on the brief were Panner, Johnson, Marceau, Karnopp & Kennedy, and Robert L. Nash, Bend.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Husband appeals a decree of dissolution of marriage. He assigns as error the award of $300 per month permanent spousal support and of attorneys fees to the wife.

Husband, then aged 44, and wife, aged 54, were married in July, 1973, in Nevada, where they then resided. She had children (now adults) by a prior marriage, but no children were born as a result of this marriage. At the time of the marriage, wife had a secure teaching position, with approximately 14 years experience in the school district. She was also a tennis coach. During her last full year of teaching (1973) she earned almost $11,000.

About nine months after the wedding, husband decided to move to Oregon. He did so, he claimed, with the expectation that his wife would not follow. Considering her marriage paramount to her career, she remained in Nevada only until the end of the school year and then moved to Oregon to be with him. She was granted a leave of absence from her teaching position for the 1974-75 school year, but when she did not return for the 1975-76 term she was replaced and lost her seniority. While she lived with her husband in Oregon, she occasionally taught as a substitute. She has done no substitute teaching since 1976. After their separation she attempted unsuccessfully to regain her position in the Nevada school district. In 1977 she worked for three months as a legislative attache, earning $6 an hour. Since then she has found no regular work.[1]

Wife's adjusted gross income for the years 1973-77 was:

| | |
|------|---------|
| 1973 | $10,834 |
| 1974 | 8,872 |
| 1975 | 2,618 |
| 1976 | 3,606 |
| 1977 | 2,691 |

---

[1] In the month prior to the hearing she was employed one hour each day teaching a home-bound student. She was paid six dollars an hour.

She now lives in a mobile home owned by her son on a lot she owns. Her estimated monthly expenses at the time of the hearing were $364. She has a high blood pressure problem, but is physically active.

Husband, who worked for many years as an engineer and draftsman in the aerospace industry, is now employed as a laborer for a lumber company. His adjusted gross income for the years 1973-77 including income from various properties was:

| 1973 | $12,622 |
| 1974 | 8,368 |
| 1975 | 10,881 |
| 1976 | 5,789 |
| 1977 | 18,814 |

In addition he has non-taxable income from a $14,000 Canadian trust,[2] and he owns a lot in Oregon and a 10-acre tract in Alaska. He is in good health.

Each of the parties had substantial savings or investments when they entered the marriage. During the marriage the wife acquired two parcels of land, which she deeded to her children. She acquired the property with money she had been saving for them for many years. During the marriage husband purchased four lots in Oregon with money he had previously saved. Wife helped clear and improve one lot, where they lived while married. While the parties were married, husband sold the four lots for a total of approximately $21,000 and another lot purchased prior to marriage for approximately $17,000. She received no proceeds from those sales.[3] The parties also acquired a $7,000 mobile home, a $10,500 lot in Las Vegas and a $1,000 snowmobile, contributing approximately equally to those purchases.

[2]There is conflicting evidence in the record concerning the amount of money he receives from the trust. The most reliable evidence, however, is that he is paid $800 yearly.

[3]Husband sold three of the lots without the permission of the court after an order had been issued prohibiting the transfer of any marital properties without such permission. The parties were in conflict as to whether those were marital properties. Neither party, however, has appealed the distribution of property under the decree.

The parties were in dispute concerning the proper distribution of their property. Husband claimed that they had agreed to maintain separately the property each acquired during the marriage, but she claimed that they had only agreed that the money she had saved for her children would not become marital property. The decree awarded wife the mobile home and the snowmobile and awarded the parties their respective shares in the Las Vegas property as tenants in common. Neither party has appealed the property distribution.

Wife has no savings. She does own property where she lives and a one-half interest in two other lots. It is unclear whether or not she has a vested pension and, if so, when she will be eligible to begin receiving payments.

Husband argues that the award of permanent spousal support was improper, because the marriage lasted only four years. He asserts that our prior decisions have established that permanent spousal support is proper only where the duration of the marriage is much longer. Husband's argument reflects a misunderstanding of the prior cases. While it is true as an historical matter that we have previously awarded permanent spousal support only where the marriage has been of a substantially greater duration than here,[4] it is not true that those decisions were based solely upon the period of the marriage. The relationship between the duration of marriage and other significant factors which are often, but not necessarily, inferable from the duration, *e.g.* the ages of the parties, has not always been explicitly recognized.

In *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974), however, we did clarify the significance

---

[4] In *Trimble and Trimble,* 23 Or App 618, 543 P2d 18 (1975), wife, aged 55, and husband, aged 71, were married only five years. Her only marketable skill was housekeeping. We modified the decree to award her $100/month support until aged 62.

of the duration of the marriage. We stated in regard to permanent spousal support:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife has foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate." 17 Or App at 655-56.

In *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977), the Supreme Court approved the approach we adopted in *Kitson,* rephrasing the rule more generally as follows:

"[T]he most significant factor is usually whether the wife's property and potential income, including what she can earn or can become capable of earning, will provide her with a standard of living which is not overly disproportionate to that she enjoyed during the marriage." 280 Or at 348.

■ In this case it is clear that the wife sacrificed secure employment to fulfill what she considered her marital obligation to be with her husband. For a younger person with her qualifications the marriage might have proven a mere interruption in a full-time teach-

ing career, but for her it appears to have been a career termination. If she is employable at all, it is only at a level of income which would provide a standard of living substantially below that she enjoyed while married. In light of that and the other factors set forth in ORS 107.105(1)(c),[5] permanent support was just and equitable.[6]

Under all the circumstances, however, $250 per month—the amount which the wife requested[7]—is a more appropriate award.

[5] ORS 107.105(1)(c):

"Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"For the support of a party, in gross or in instalments, or both, such amount of money for such period of time as it may be just and equitable for the other party to contribute. The court may approve, ratify and decree voluntary property settlement agreements providing for contribution to the support of a party. If requested by either party, the court shall make and set forth in its decree the findings of fact upon which its award or denial of support was based. In making such support order, the court shall consider the following matters:

"(A) The duration of the marriage;

"(B) The ages of the parties;

"(C) Their health and conditions;

"(D) Their work experience and earning capacities;

"(E) Their financial conditions, resources and property rights;

"(F) The provisions of the decree relating to custody of the minor children of the parties;

"(G) The ages, health and dependency conditions of the children of the parties, or either of them;

"(H) The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I) Such other matters as the court shall deem relevant."

[6] As the court noted in *Grove and Grove,* 280 Or 341, 348, n 5, 571 P2d 477 (1978), however:

" 'Permanent' is a relative term in this context. Spousal support may be modified or terminated at any time upon a showing of a sufficient change of circumstances. We speak of 'permanent' support as that which continues indefinitely if no such change is shown as distinct from support awards which, by the terms of the decree, terminate after a specified period unless grounds for extension are shown."

[7] In her responsive pleading wife requested only $250 a month for three years. In light of the decision in *Grove, supra,* footnote 6, which was issued after the pleadings were filed, the trial court appropriately determined that an award of permanent support was warranted.

■ The award of attorneys fees was proper. ORS 107.105(4).

Costs to neither party.

Affirmed as modified.