Argued and submitted January 19,
affirmed as modified June 15, 1981

In the Matter of the Marriage of

YANTIS,
*Respondent,*
*and*
YANTIS,
*Appellant.*

(No. 79-1045-E, CA 18590)

629 P2d 883

Robert S. Hamilton, Klamath Falls, argued the cause and filed the brief for appellant.

D.L. Hoots, Klamath Falls, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

Thornton, J., dissenting opinion.

## VAN HOOMISSEN, J.

Husband appeals a dissolution decree awarding wife permanent support of $300 monthly, contending that no support was justified or, in the alternative, that less support should have been ordered and for a limited period. We review *de novo* and affirm as modified.

The parties have been married 24 years. Two children were born of the marriage, one is now married and the other, age 20, is a full time student.[1] The parties reported $20,166 gross income in 1979, of which $16,499 was earned by husband.

Husband, a high school graduate, is 45 years of age and in good health. He has been employed for more than 15 years by the same employer and earns about $1,300 monthly gross pay. His deductions total about $482 monthly, which includes a payment of $51 to his pension program.[2] This leaves him about $818 monthly take home pay. From this husband must pay $200 monthly child support through April, 1981. Husband estimates his other expenses are $775 monthly, including a monthly credit union payment of $180 on an obligation which was discharged in July, 1980. He indicates he pays $115 monthly for housing expenses, using the parties' former home (title to which was reconveyed upon separation to wife's father, who had originally conveyed it to them); however, he testified he had not been making the payments. His other major estimated monthly expenses are food $150, utilities $100, transportation $65 and entertainment $50.

Wife, also a high school graduate, is 42 years of age. She suffers from migraine headaches and has an ulcer.

---

[1] The parties agreed and the decree provides that husband shall pay $200 monthly child support. The child was 21 years of age April 28, 1981, at which time husband's obligation to provide support was terminated.

[2] Husband has contributed $7,400 to his pension program. Both the employee and the employer contribute. Early retirement is available at age 62, normal retirement at age 65 and mandatory retirement at age 70, with extensions past age 70 at the employer's option. The plan provides certain benefits if husband is disabled prior to reaching retirement age and certain spousal survivor benefits should husband die before reaching retirement age. Husband is entitled to a refund of his contribution with interest should he terminate his employment before becoming eligible for retirement or disability benefits.

She has recently seen a psychiatrist for acute depression.[3] Wife was 18 years old the year the parties married. Between 1956 and 1971 she worked at home in the role of wife, mother and homemaker. Commencing in 1971 and up to the present time, she has worked part-time as a cook's helper, meat wrapper and school bus driver. She is presently employed nine months annually as a part-time school bus driver. She recently completed a typing course and believes she will be able to get a summertime office job. She earns about $438 monthly gross pay, and she has monthly take-home pay of about $320. She estimates her

---

[3] Wife testified:

"Q. Mrs. Yantis, what is your health condition?

"A. I have migraine headaches. I've got an ulcer and last year I was seeing a psychiatrist for acute depression.

" * * * * *

"Q. What medicine are you taking?

"A. I left the list in my purse, but I have to have five grains of thyroid a day and I have been on Tagamet for my ulcer, but I don't have that prescription now because I can't afford it. And I'm supposed to take Premarin. It's a hormone pill. And I haven't afforded that for two months. And I have migraine headaches and they give me the shots for those. The shot is $7 or $7.25 and the medicine is, I think she said $2.

"Q. You have $1.25 here for something. Would that be it?

"A. Oh, yeah, that's the medicine for the shot.

"Q. How often do you take these shots, Mrs. Yantis?

"A. When I get a migraine, I'm supposed to take the shot as soon as I feel one coming on.

"Q. Can you give the Court some idea of the frequency

"A. Probably ten since last November.

"Q. So, maybe twice a month would be a fair average?

"A. Yes.

        "THE COURT: When did these migraines start? Last fall?

            "THE WITNESS: No. I've had migraines since my daughters were in grade school. I believe my oldest daughter was in the sixth grade the first time I had a migraine, your Honor.

" * * *

"Q. Other than that time I think you mentioned when you couldn't take some extra or take on some extra trips as far as bus driving, have you had any other health problems that have interfered with your ability to work?

"A. Only the migraine. You never know when they're going to pop up."

monthly expenses will be $730. Some of her figures are only estimates because, between the time of the parties' final separation in November, 1979, and the hearing, wife lived with someone else and shared expenses. She testified that she did so only because she could not afford to support herself on her income and that she hoped to get a place of her own. The record is not clear whether she has any pension program. If she has, it has only minimal value at this time.[4]

The parties have divided their personal property in an amicable manner. At trial, wife did not ask for a monetary settlement on account of husband's pension plan.[5] In lieu thereof, she asked for spousal support. Although wife disclaimed any interest in husband's pension plan, we realize she did so with an understanding that an equitable award of support would be made. The trial court awarded wife permanent support of $300 monthly. Husband appeals.

We find: (1) the parties have agreed that husband should pay $200 monthly child support thru April, 1981; (2) the parties have divided all their marital property other than husband's pension plan, and it appears to us that the distribution is substantially even; (3) husband's pension program is marital property; (4) the incomes, pensions, disability and fringe benefits of the parties are grossly

---

[4] Wife testified:

"Q. And you just qualified for your retirement pension fund?

"A. I qualified for it for one month and that was because I had three and a half hours for six months and then that month I lost my half hour and so I only have three hours and I have to find out if I still qualify."

[5] On direct-examination wife testified:

"Q. Okay. Now as I understand it, you're not asking for any share of your husband's retirement, are you?

"A. I understand that I'm entitled to half of it. I have been married for this many years and I have nothing to show for it. I have no money or anything. I think that I've earned something, too. I've raised him two beautiful daughters.

"Q. Maybe I misunderstood your attorney. Are you asking for half of this?

"A. No.

"MR. HOOTS: To clarify the situation, we're asking for alimony in lieu of any claim against —* * *."

disproportionate and probably will remain so in the future; and (5) husband's health is good, but it appears wife suffers from health problems that may reduce her earning capacity and/or increase the cost of her support.

This is a case where, arguably, the combined incomes of the parties is barely enough to maintain one household. Now the parties will have to maintain two households, and this will no doubt work a hardship on both of them. Something must give.

Wife needs additional income. She has several options available to her. First, she may seek full-time, year-round employment. Second, she may seek other part-time employment to supplement income from her present part-time employment. Third, if she elects to continue with part-time employment, she may earn additional income by extending her part-time employment from nine to twelve months annually.

ORS 107.105(1)(c) defines certain factors which a court is to consider in determining the amount and duration of spousal support. *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified,* 280 Or 769, 572 P2d 1320 (1977), and *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, *rev den* (1974), provide guidelines for the application of these statutory criteria.

We believe support at the level ordered by this court, when combined with her current and future potential income, will provide wife with a standard of living which is not overly disproportionate to the one she enjoyed during this long-term marriage. *Kitson and Kitson, supra,* 17 Or App at 655. We have held that in the dissolution of a marriage of substantial duration we will attempt to see that the parties separate on as equal a basis as possible. *Lake and Lake,* 22 Or App 195, 538 P2d 97 (1975). We have also held that we will not ignore the economic impact of health problems. *Grove and Grove, supra, 280* Or at 350. Nor will we ignore the reality recognized in *Grove:*

"* * * that, at least until recent years, young women entering marriage were led to believe—if not expressly by their husbands-to-be, certainly implicity by the entire culture in which they had come to maturity—that they need not develop any special skills or abilities beyond those

necessary to homemaking and child care, because their husbands, if they married, would provide their financial support and security. We cannot hold that women who relied on that assurance, regardless of whether they sacrificed any special career plans of their own when they married, must as a matter of principle be limited to the standard of living they can provide for themselves if 'employed at a job commensurate with [their] skills and abilities.' The marriage itself may well have prevented the development of those skills and abilities." 280 Or at 351.

Each case must be resolved upon its own facts. Applying ORS 107.105(1)(c), as interpreted in *Grove* and *Kitson,* to the facts of this case, we conclude that permanent spousal support in the sum of $150 monthly is appropriate from the date of the decree until May 1, 1981. This will about equalize the current income of the parties, but giving some advantage to husband, because he can deduct spousal support which is taxable income to her. When husband's child support obligation is terminated, his disposable income will be increased by $200 monthly. We believe that wife should share in this increase, if for no other reason than because she has relinquished any interest in husband's pension program. Accordingly, wife's permanent spousal support shall be increased from $150 to $200 monthly effective May 1, 1981.

Affirmed as modified. No costs to either party.

**THORNTON, J.,** dissenting.

My reading of this record leads me to the conclusion that the allowance of $200 a month permanent spousal support to this 42 year old woman is improper for two reasons. First, it is excessive considering husband's wage level and limited assets, and wife's capability of earning more than she is presently.[1] Secondly, it represents a shift of position by this court, if not a clear departure from the rules announced in *Kitson and Kitson* 17 Or App 648, 523

---

[1] There is presently $7,400 in the husband's pension fund, which is fully vested, but from which husband will receive no benefits until he retires. There was no evidence of the present value of this asset. It appears that wife as a school district employe is also a contributing member of the Public Employes Retirement System. There was no evidence presented as to the value of wife's pension account.

P2d 575 (1974), and expanded upon in *Grove v. Grove,* 280 Or 341, 571 P2d 477, modified 280 Or 769, 572 P2d 1320 (1977).

In *Kitson* this court said in part:

"If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her husband's future income."

In *Grove* the foregoing language from *Kitson* was quoted with approval. In addition, the *Grove* court said:

"It is proper and desirable, however, where the circumstances permit, to tailor the financial provisions of a dissolution decree in a way which provides the wife an opportunity to increase her earning capacity and thus eliminate the need for permanent support or to reduce the amount required."

I conclude this is what should be done in this case. I conclude that spousal support of $200 per month for five years is appropriate. I perceive no reason under the circumstances for providing wife permanent spousal support. *Kitson and Kitson, supra.* It appears to me, that, despite her health problems, wife's age and level of education should permit her to expand her earning capacity through further education or training. Keeping spousal support at a constant level and terminating it after five years encourages her to seek that training without overtaxing husband's limited capacity to pay. I submit that it would not be equitable, in the words of *Kitson,* to provide wife with an annuity of $200 a month for life in this case.