Argued and submitted May 7, affirmed as modified October 27, 1982

In the Matter of the Marriage of
STEINBRENNER,
*Appellant,*
*and*
STEINBRENNER,
*Respondent.*

(No. 80-1829-E, CA A23047)

652 P2d 845

Donald H. Coulter, Grants Pass, argued the cause for appellant. With him on the brief was Myrick, Coulter, Seagraves, Myrick & Adams, Grants Pass.

Richard K. Lane, Grants Pass, argued the cause for respondent. With him on the brief was Brown, Hughes, Bird & Lane, Grants Pass.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Wife appeals from a dissolution decree. She contends that the trial court erred (1) in reducing the value of husband's retirement accounts 40 percent to reflect future tax consequences, (2) in underestimating the value of the "good will" in his medical practice and (3) in failing to award her $750 monthly permanent spousal support.

The parties were married 16 years. Husband, age 41, is a physician who practices alone in Grants Pass. The parties' income was substantially attributable to his earnings. Wife contends that his gross annual income was $94,227 in 1978, $109,936 in 1979 and $120,676 in 1980 and that his net spendable income for those years was $45,939 in 1978, $52,137 in 1979 and $55,446 in 1980. He contends that her income figures are incorrect, because they do not accurately reflect the effect of his business depreciation, Keogh contributions and taxes. He contends further that his net spendable income was $42,312 in 1978, $47,364 in 1979 and $45,360 in 1980.

Wife, age 38, was employed as an airline stewardess and bank teller before the marriage. She was not regularly employed outside the home during the marriage. At the time of trial, she was in her second year of college, pursuing a teaching degree. She expects that she can earn $12,000 to $14,000 a year after graduation.

Custody of three children was awarded to wife. Husband was ordered to pay child support of $400 monthly for each child and $600 monthly spousal support until December, 1984, when wife expects to graduate. Real property was ordered sold with the proceeds being divided equally. Among the other assets divided were husband's Keogh account ($27,000), his unvested retirement fund with Rogue Valley Physicians' Service (RVPS) ($11,900) and his medical practice, with tangible physical assets of $12,000 to $14,000.

■ Wife first assigns as error the trial court's decision to reduce the value of husband's Keogh and RVPS accounts by 40 percent to reflect the tax consequences that might

occur when he withdraws those funds.[1] No evidence was offered at trial to support finding that he will be in a 40 percent tax bracket when he withdraws those funds. In *Rogers and Rogers,* 45 Or App 885, 609 P2d 877, *modified* 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853, 642 P2d 307 (1981), we noted that:

"* * * [L]itigants who contest the appropriate treatment of a retirement account in these cases must develop a full record of all the relevant details." 45 Or App at 893.

*See also Franzke and Franzke,* 292 Or 110, 116, 637 P2d 595 (1981). Recently we explained that:

"* * * The tax on the funds as received will vary depending on the amounts received, prevailing tax rates and husband's other income. Future taxes are thus entirely speculative. We refuse to consider them. * * * " *Clapperton and Clapperton,* 58 Or App 577, 581, 649 P2d 620 (1982).

*See also Whitcomb and Whitcomb,* 39 Or App 763, 766, 593 P2d 1239, 40 Or App 583, 595 P2d 846, *rev den* 286 Or 745 (1979). Given the indeterminable nature of husband's future tax liabilities on his Keogh and RVPS accounts, we conclude that the trial court erred in reducing the value of those accounts.[2]

■        Wife next assigns as error the value placed by the trial court on the "good will" attributable to husband's medical practice. The court assigned a value of $20,000 to his practice. The tangible assets are worth $12,000 to $14,000. She contends that an allowance of only $6,000 to $8,000 for good will is unfair.

The court heard testimony from three expert witnesses on the issue of good will. Husband's expert, a CPA, is husband's accountant. He testified that about a third of his practice involved local physicians, that he was familiar

---

[1] At trial, husband offered evidence that he would incur tax liability of approximately 55 percent of current value if he were to withdraw his Keogh funds now but that he had no intention of doing so. He is unable to withdraw his RVPS account now, because it is not vested.

[2] Husband contends the trial court should not have considered his RVPS retirement plan as a marital asset because it is not vested. *See Roth and Roth,* 31 Or App 65, 569 P2d 693 (1977). Husband did not cross-appeal. Accordingly, his contention is not before us. *Kyle and Kyle,* 22 Or App 44, 46, 537 P2d 585 (1975).

with about 15 sales of medical practices in the Grants Pass area and that in only one of those sales was any value assigned to good will.[3] He concluded that any good will in husband's practice had negligible monetary value.

Wife's first expert, also a CPA, admitted that he had never before valued a *medical* practice. He stated that his firm had valued businesses of all types on an ongoing basis. His opinion was based on a formula for evaluating businesses found in a book that he brought with him to court[4] and on a "method" that he and his partner had seen used before. He valued good will at $35,000. Wife's second expert, a lawyer specializing in estate planning, taxation and real estate, stated that he was not familiar with any doctors in the Grants Pass area or with their incomes. On cross-examination, he stated that his opinion was based on his estimate of what would constitute "reasonable compensation" for husband's professional services. He stated that he did not know whether the figure he had used was reasonable compensation in the Grants Pass area and that his estimate was based on "some studies as to what various physicians would earn in a given year."[5]

The trial court's finding, while not adopting any of the experts' opinions, indicates greater reliance on the opinion of husband's expert. We conclude that that reliance was reasonable, and we find no compelling reason to reject the valuation made by the court.

■ ■ In her final assignment of error, wife asks us to review the trial court's award of spousal support. Wife asks for permanent spousal support of $750 per month. The decree gave her $600 per month from November, 1981,

---

[3] Husband's expert testified that no value can be given to good will when a sole practitioner sells a medical practice. He acknowledged that a value might be placed on the good will of a partnership or professional corporation that was negotiating to take in a new colleague.

[4] Husband's expert testified that he had never seen a medical practice evaluated using the formula used by wife's first expert. He observed that the author of the book relied on by wife's expert was critical of using that formula in evaluating a *medical* practice.

[5] Although husband's expert and wife's second expert used the same basic formula in reaching their conclusions, they differed on what constituted "reasonable compensation" for husband's services, an integral component of that formula.

through December, 1984. The record is clear that, even after wife receives her teaching certificate, she will not be able to approximate the standard of living she enjoyed while married. Where a marriage is of long duration and the earning capacity of one spouse greatly exceeds that of the other, permanent spousal support is warranted in order that the supported former spouse may enjoy a standard of living not unduly disproportionate to that which he or she would have been enjoyed had the marriage continued. *Grove and Grove,* 280 Or 341, 571 P2d 477, *modified* 280 Or 769, 572 P2d 1320 (1977); *see also Hayner and Hayner,* 58 Or App 324, 648 P2d 379 (1982); *Plaster and Plaster,* 55 Or App 700, 639 P2d 1287 (1982); *Yantis and Yantis,* 52 Or App 825, 629 P2d 883 (1981). In determining the proper amount and duration of spousal support, we consider the spouse's training, experience, age, health, education and earning capacity. ORS 107.105(1)(c). We conclude that the amount and duration of spousal support awarded here is inadequate and that wife is entitled to spousal support of $750 monthly for three years from the date of the original decree and $400 monthly thereafter.

Decree modified to provide that husband pay $750 monthly spousal support for a period of three years from the date of the original decree and $400 monthly thereafter; wife's judgment against husband is increased from $29,570 to $37,350 to reflect the adjusted value of the Keogh and RVPS accounts.[6] Affirmed as modified. Costs to wife.

---

[6] The trial court intended to divide the present value of husband's Keogh and RVPS accounts equally. The Keogh account ($27,000) and the RVPS account ($11,900) balances were discounted 40 percent by the trial court before the division. Each party received $8,100 of the value of the Keogh account and $3,570 of the RSVP account. By dividing the *full* present value of both acounts ($38,900), we find that each party should receive $19,450. Wife received only $11,670. Therefore, we increase her judgment against husband by the sum of $7,780.