Argued and submitted December 19, 1990, judgment modified in part; otherwise affirmed June 12, 1991

In the Matter of the Marriage of

Barbara Ann STUART,
*Appellant,*
*and*

Bryan James STUART,
*Respondent.*

(88-364-DI; CA A62338)

813 P2d 49

Delos B. Parks, Jr., Klamath Falls, argued the cause for appellant. On the brief were Michael Ratliff and Parks & Ratliff, Klamath Falls.

Robert S. Hamilton, Medford, argued the cause for respondent. With him on the brief was Frohnmayer, Deatherage, Pratt, Jamieson & Turner, Medford.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., concurring in part; dissenting in part.

**EDMONDS, J.**

Wife appeals a dissolution judgment. We review *de novo* and modify the judgment.

Husband was 39 years old and wife was 45 at the time of the dissolution proceeding in 1989. They were married in 1973. At the time of the marriage, wife was a recent nursing school graduate and husband had just finished his second year of medical school. Husband began his third year while wife worked as a registered nurse, earning $490 per month. He received $425 per month from the GI bill and $88 per month payments from a contract for the sale of his house. He also took out student loans. He paid his tuition, and the parties shared the cost of other school and general living expenses. Husband graduated in June, 1975, and they moved to California, where he completed a one-year internship and a two-year residency. Wife worked as a nurse, earing $1,200 per month, from the fall of 1975 until the birth of the couple's first child in the fall of 1977. In 1978, husband finished his residency and began to work at a clinic, earning approximately $50,000 per year.

In 1979, they moved to Klamath Falls, where husband went into private practice with another physician. Wife maintained the family home and raised the children, the second of whom was born in 1980. After two years, husband opened his own office. Wife worked at his office full-time for the first six months, earning $1,000 per month. Her duties included office and business manager, receptionist and nurse. After that, she worked part-time, gradually reducing her hours until husband closed the office in 1985.

Since 1985, husband has worked on contract for a doctor who, in turn, has a contract with a medical center for emergency room services. He also works part-time at the Oregon Institute of Technology Student Health Services. He earned $127,319 in 1985; $139,710 in 1986; $142,172 in 1987; $145,318 in 1988 and $47,552 in the first three months of 1989.

Since 1985, wife has worked part-time as a registered nurse, earning $800 to $1,000 per month. Although there is full-time work available, she works part-time so that she can be home when the children come home from school. She plans

to get her master's degree in nursing, for which she has completed some of the work. She estimates that it will take her two summer sessions to finish. With that degree, she will be able to work as a nursing instructor, which would pay $25,000 per year and would allow her to have a schedule compatible with being with her children.

The trial court awarded wife custody of the children and ordered husband to pay $500 per month support for each child. It also ordered him to carry a life insurance policy to cover his support obligation for the children and permitted him to name his brother as beneficiary of the policy in trust for the children. The court awarded wife spousal support of $1,500 per month for four years and ordered husband to pay an additional $10,000 over two years to enable wife to obtain her master's degree. She was awarded the family home, one-half of the parties' pension funds and a medical building and equipment. Those assets are valued at $117,802.94. Husband received one-half of the pension funds and a duplex that is rental property. The total value of assets awarded to him was $71,755.94.

■ Wife first argues that the court erred "in failing to find either a marital property interest or making some other allocation on account of husband's medical degree and enhanced earning capacity acquired during the marriage through the joint efforts of the parties." In *Grove and Grove,* 280 Or 341, 358, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977), the court rejected a similar argument and concluded that enhanced earning capacity, because of a professional degree, is best considered in reaching an equitable award of spousal support and division of property, without allocating future earnings on the basis of principles applicable to property rights.

■ Wife next argues that the trial court failed to consider the goodwill of husband's professional practice. Goodwill of a professional practice may be included in valuing marital property. *See, e.g., Steinbrenner and Steinbrenner,* 60 Or App 106, 652 P2d 845 (1982). Here, there is no goodwill to consider, because husband has no private professional practice. His employment by another physician is under a contract that is terminable without cause on 90 days notice and is non-transferrable. He only sees patients in the emergency room.

He does not maintain an office, has no accounts receivable and owns no equipment or supplies. As a result, wife's argument fails.

■      Wife next asserts that the spousal support award is inequitable in the light of the parties' disparate earning capacities. ORS 107.105(1)(d) provides that, in determining the amount of spousal support, the court shall consider, *inter alia:*

"(C)   The contribution by one spouse to the education, training and earning power of the other spouse;

"(D)   The earning capacity of each party, including the educational background, training, employment skills and work experience * * *."

The trial court awarded wife $1,500 per month for four years, in addition to $10,000 over two years toward the cost of obtaining a master's degree.

We conclude that limiting spousal support to four years is inequitable under the facts of this case. For 15 years, wife participated with husband in providing for their family while he finished medical school, completed his internship and residency and operated his own medical practice. Even though wife has the opportunity to work full-time now and, after finishing her education, will be qualified to work as a nursing instructor, her salary will not provide her with a standard of living that is commensurate with that which she enjoyed while married. Her projected salary as a nursing instructor will be $25,000 per year. Husband's projected annual income will exceed $150,000. In recognition of the 15-year contribution that wife made to husband's earning power and the disparity between the standard of living that the parties' incomes will provide them, we modify the trial court's award to provide for $1,500 per month permanent spousal support, in addition to the lump sum award. That will allow wife the opportunity to achieve a standard of living not unduly disproportionate to that which she enjoyed during the marriage. *See Steinbrenner and Steinbrenner, supra.*

■      Wife next contends that the court erred in allowing husband to name his brother as the beneficiary of his life insurance policy in trust for the children. The policy provides for the continuation of child support payments in the event of

husband's death. She argues that ORS 107.820(1) "specifically provides that the custodial spouse should be provided as the beneficiary of any such policy."[1] Husband argues that, because the court has discretion under ORS 107.820(1) to order an obligated party to maintain any existing life insurance policy, it should also have discretion as to whom to name as beneficiary. Although we agree that the trial court and we have that discretion, we conclude that wife is the appropriate beneficiary, because the purpose of the policy is to secure the payment of husband's child support obligation in the event of his death. Accordingly, we modify the judgment to require husband to name wife as the beneficiary of the life insurance policy.

■   Wife next asserts that the trial court erred in awarding the income tax dependency exemptions to husband. She argues that she needs the exemptions more than husband, because his income is significantly greater. On *de novo* review, we see no reason to disturb the trial court's decision.

Finally, wife assigns as error the trial court's child support award. Our review satisfies us that the support awarded is adequate.[2]

Judgment modified to award wife $1,500 per month permanent spousal support and to require that husband name wife as beneficiary of his life insurance policy; otherwise affirmed. Costs to wife.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority's *de novo* approval of the division of property and award of child support and its change of the insurance policy beneficiary. I also agree with the trial court's and the majority's award of $1,500 per month spousal support for an initial period of four years. However, I disagree with the majority's award of $1,500 per month as *permanent*

---

[1] ORS 107.820(1) provides, in pertinent part:

"[W]hen the decree creates an obligation of * * * child support, * * * the court may also order the obligated party to maintain any existing insurance policies on the life of the obligated spouse and in which the dependent spouse is named as beneficiary."

[2] The Uniform Child Support Guidelines were not in effect when this case was tried and are inapplicable. *Butcher and Butcher,* 100 Or App 476, 786 P2d 1293, *rev den* 310 Or 70 (1990).

spousal support and, therefore, dissent from that portion of the majority opinion.

In dissolving this 17-year marriage, the trial court awarded wife a substantial long-half property distribution.[1] She was also awarded a total of $1,000 per month in child support for two children. In addition, she will soon receive her masters' degree, paid for in part by a $10,000 lump-sum spousal support award provided in addition to the permanent monthly spousal support. According to wife's evidence, she will then be able to enjoy a managerial-level professional nursing career, which will pay approximately $25,000 per year. My analysis of the facts indicates that, after the first four years, $750 per month permanent spousal support would be sufficient to provide wife with a standard of living not overly disproportionate to the standard that she enjoyed *during the marriage.*

For these reasons I would award wife $750 per month permanent spousal support after the initial term of four years at $1,500 per month.

---

[1] According to the trial court's findings on values, husband received $71,755.94 and wife received $117,802.94.