Argued and submitted September 8, 1980, remanded March 24, 1981

## SMITH, nka Cogburn,
### *Petitioner,*

*v.*

## SMITH,
### *Respondent.*

### (No. 71-3146, CA 16098, SC 27080)

626 P2d 342

Tim J. Helfrich, of E. B. Sahlstrom Law Offices, Eugene, argued the cause and filed the briefs for petitioner.

Robert J. McCrea, of Morrow, McCrea & Divita, P. C., Eugene, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Tongue, Howell,** Lent, Linde, Peterson and Tanzer, Justices.

DENECKE, C. J.

---

**Howell, J., retired November 30, 1980.

## DENECKE, C. J.

This is a proceeding to modify a marriage dissolution decree. At issue is the amount of child support for the one child of the marriage. After an eight-year lapse since the original decree, the trial court increased the support to be paid by the father, currently earning net monthly income of $1,300, from $50 per month to $100 per month, along with health, medical and dental insurance. The Court of Appeals affirmed without opinion. 46 Or App 84, 609 P2d 1322 (1980).

The mother, in her petition for review, contends that the amount of child support is still grossly inadequate under the "just and proper" standard of ORS 107.105(1)(b), and that the standards by which the courts fix a child support amount have been very general and imprecise. We granted review to consider generally the proper approach in determining the amount of child support. In particular we asked the parties to address the following question in argument:

"What, if any, 'guidelines' should be established by the court for application by trial courts in fixing the amounts payable for child support in suits for dissolution of marriages?"

We will discuss this general question involving the award of child support before considering the specific facts of the present case.

In a dissolution case, ORS 107.105(1)(b) empowers the court to provide:

"For the recovery from the party not allowed the care and custody of such children, or from either party or both parties if joint custody is decreed, such amount of money, in gross or in installments, or both, as may be *just and proper for such party, either party or both parties to contribute toward the support and welfare of such children. * * *"* (Emphasis added.)

As was the case in *Grove and Grove,* 280 Or 341, 571 P2d 477 (1977), in which we considered the guidelines for determining the amounts payable for and the duration of spousal support, we must begin our discussion with some general observations. First, the issue of child support cannot adequately be considered except in the light of the

provisions of the dissolution decree in regard to the division of property and spousal support. This interrelationship has been recognized both by the legislature *(See,* ORS 107.105(1)(c), §§ (E), (F) and (G)) and by this court. *Grove and Grove, supra,* 280 Or at 344.

In practice, also, the interrelationship affects every part of the decree. For example, one spouse may be awarded specific assets as a part of the property division so as to provide the spouse with income for the support of the child or to decrease the expenses of upbringing the child, or the child may benefit from spousal support payments insofar as they are applied to housing and household maintenance. The tax consequences of the characterization of a payment either as child support or as spousal support makes the interrelationship even more evident.[1] Such matters must be considered in determining the just and proper contribution of a party toward the support and welfare of the child.

■ Second, child support itself may take forms other than direct monetary contribution. It may take the form of payments for medical care *(Coastal Adjustments v. Wehner,* 246 Or 115, 423 P2d 967 (1967)), life insurance in the child's name on a parent's life *(Cooley v. Cooley,* 1 Or App 223, 461 P2d 65 (1969)), a trust for the child's education *(Rinehart and Rinehart,* 26 Or App 513, 552 P2d 1346 (1976)), or hospital, medical or dental insurance. All such forms of indirect support must be included in determining the just and proper contribution of a parent toward the support and welfare of the child.

■ Third, the cases which concern matters of child support reaching the appellate courts may not be representative of most marriage dissolution cases. The cases which are appealed are, with some exceptions, those in which the parties' incomes or assets, or both, are large enough to allow some flexibility in the award of child support without

---

[1] If a sum is paid as child support it is not deductible for income tax purposes by the payor and is not considered income to the payee for income tax purposes. If paid as spousal support, under certain circumstances, it is deductible to the payor and is income to the payee. In a dissolution case, the decision as to which spouse is to receive the beneficial tax consequences may control the decision whether the sum is labeled as child or spousal support.

depriving either party of the basic necessities of life. The holding in this case applies to such situations.[2]

The present case is typical of those which the Court of Appeals has often considered. The parties have one child. At the time of the original decree the child was three years old and custody was given to the mother. Eight years later at the time of the modification proceeding, the father's net income was $1,348/month and his present wife, for medical reasons, did not work outside of the home. The mother had take home pay of approximately $1,100/month and received $100/month child support; in addition, her present husband received $364/month in Social Security disability payments and her child received $96.40/month from Social Security. The mother claimed household expenses in excess of $2,000/month but the father contested that estimate.

The legislature gave only limited guidance in ORS 107.105(1)(b); it listed no factors which are to be considered by the courts in awarding child support. Since the legislature gave no specific directions for determining what is "just and proper," the trial and appellate courts are left to make that determination.

■ It is significant that the legislature chose to express the standard in terms of what is "just and proper" rather than solely in terms of need. We have concluded, in light of this choice, that the purpose of child support is not merely to prevent the child from becoming a public charge. Thus, we have considered, at least as far as practical, "comforts and luxuries of life" that the child would have enjoyed had it not been for the dissolution. *Trombley v. Trombley,* 225 Or 209, 211, 357 P2d 283 (1960); and *see Newman v. Newman,* 8 Or App 220, 222, 493 P2d 71 (1972).

■ All of the circumstances of the parties as well as the needs of the children must be considered. *Dietz and Dietz,* 271 Or 445, 533 P2d 783 (1975). One such circumstance is often the impossibility of maintaining the same

---

[2] Pursuant to statutory authority, ORS 416.420, the Support Enforcement Division of the Attorney General's office adopted temporary rules relating to support guidelines to be used in determining minimum child support obligations for recovery of assistance payments. OAR 137-50-010. This opinion is not directed at cases already covered by those rules.

lifestyle that the child would have enjoyed but for the dissolution. In that situation, the child must share the overall burden of the lower standard of living caused by the expense of maintaining two separate households. In considering the circumstances of the parties, it is reasonable to require the party with the greater earning capacity to bear a greater portion of the financial burden of the child's upbringing. *See Weiser and Weiser,* 29 Or App 549, 552, 564 P2d 737 (1977). Yet the burden on the one paying support should not be so heavy as to preclude the ability to support oneself and one's other dependents. *See Hockema v. Hockema,* 18 Or App 273, 524 P2d 1238 (1974).

Although each case must be considered on its own facts, it is proper to develop general principles to the end that similar cases will be treated similarly. To date such principles in the child support area have included only those enumerated above. Since the principles are few and the appearance of uniformity among support orders is lacking, as a sample of recent decisions indicates (see Appendix), there is a need for more uniformity among support orders consistent with typical differences of different families.

In response to our request for a guideline which this court could furnish to the trial courts for application in fixing the amounts payable for child support, the mother on oral argument suggested a system based on the noncustodial parent's "ability to pay" and the child's "needs." Under that system the net income of the paying parent would be the most significant factor in determining the "ability to pay." The child's "needs" would be defined in the same respect as with spousal support; that is, they would be geared to the standard of living that would have been enjoyed but for the dissolution. Yet "need" would also be based on evidence of actual, necessary expenses and the expected costs of child rearing. The award would be determined by using the rules of the Support Enforcement Division, OAR 137-50-010 as a touchstone. Then, to allow for the special circumstances involved in each case, any evidence relevant either to "ability to pay" or to "need" would be admissible and considered by the courts, with the ultimate decision as to the amount of support in each case being within the discretion of the court.

We accept the mother's analysis insofar as it is based on the noncustodial parent's ability to pay and the child's needs, but we cannot accept her suggestion that we follow the rules of the Support Enforcement Division. The rules include a scale which determines the amount of support as based on the payor's net income, along with a formula to alter that amount depending on the special circumstances of the case. The scale figure is determined by taking a set percentage of the noncustodial parent's monthly net income, the percentage being dependent on the number of children: 22% of net income for one child; 33% of net income for two children; 40%of net income for three children; and 46% of net income for four or more children. Once the scale figure is determined, it is adjusted upward or downward according to the following formula factors:

"a.   Needs of the child;
 b.   Earnings potential of the obligor;
 c.   Obligor's ability to borrow;
 d.   The amount of equity the obligor has in real and personal property;
 e.   Existence of other dependents of the obligor;
 f.   The amount of support the obligor is required to pay for other dependent children;
 g.   Special hardships of the obligor; and
 h.   Any other circumstances that affect the need for support or the obligor's ability to pay support." (OAR 137-50-010)

■    According to the mother, these rules would be a useful starting point in all child support cases, not just those in which the Support Enforcement Division plays a role. We cannot accept that argument and we limit the application of this particular scale and formula to the same cases to which the legislature limited its application — to those cases in which the division is involved in recovery of assistance payments. The reason is that in establishing the percentages to determine the scale figure, it was undoubtedly assumed that the custodial parent had custody throughout the year and was a recipient of governmental benefits, with a poverty level income and limited assets. The amount of child support should be affected by the custody arrangement, as the expenses of childrearing shift to the noncustodial parent during long vacation visitations

and the expenses of child rearing are shared in a joint custody situation. When the custodial parent is working or has spendable income, the amount of child support should be decreased and it would not necessarily match the scale figure, even with the formula applied. Although we do not accept the method of computing support or the list of factors to be considered in altering it, both will receive consideration later in this opinion.

Various alternatives have been proposed by the commentators or adopted by the courts in calculating child support. There are three basic approaches to determining child support: a case-by-case method; a schedule or percentage method based upon the noncustodial parent's income; and what we term a formula method. Under all three methods, the ultimate decision as to the amount of child support is tempered by the court's discretion, either based on general equitable principles or on a list of specific equitable principles to be applied.

The Oregon courts to date have used the case-by-case approach although they have not so denominated it. As discussed above, uniformity, or even the appearance of it, is lacking under this method. See Appendix. When there is no uniformity of court decisions more hearings are required to determine temporary support, settlements are more difficult, and the volume of appealed cases multiplies.

The need for uniformity is met by the schedule or percentage method.[3] Under this method, tables which are based on the noncustodial parent's net income, indicate the amount of child support, according to the number of dependents. However, in striving for uniformity the use of tables creates other deficiencies. First, they generally fail to include consideration of major factors such as the actual or potential income of the custodial parent or the time the children spend with the noncustodial parent. As one commentator explains, "Tables such as these are of questionable value where both parents are employed or employable, and they are utterly useless in cases of joint custody."

---

[3] Bair, "How Much Temporary Support Is Enough?", 1 *Family Advocate* 37 (1979) (regarding temporary support rather than permanent support).

Franks, "How to Calculate Child Support," 86 Case & Com 3 (1981). Second, the tables are unrealistic where a parent's income is substantial. Once a parent's net monthly income is over approximately $2,000 per month, the needs of the children in reality do not increase in proportion to the increases in the parent's ability to pay. Third, the tables fail to reflect the view that both parents must contribute to the best of his or her ability to the financial support of the child, and the view favoring visitation or joint custody when it is in the best interests of the child.

The deficiencies of the schedule or percentage method are minimized by the formula method.[4] Under this method, a mathematical formula is used to calculate the guideline for the support obligation to each child in terms of "income" and "need."

The income of both the custodial and noncustodial parent should be considered, regardless of the sex of either. Both parents have a duty to support their children. ORS 109.010; 109.030. ORS 107.105(1)(b) provides that the court has the power to decree "for the recovery from the party not allowed the care and custody of such children, or from either party or both parties if joint custody is decreed, such amount of money, in gross or in instalments, or both, as may be just and proper for such party, either party or both parties to contribute toward the support and welfare of such children." The Court of Appeals has correctly held pursuant to this statute, "in Oregon the sex of a noncustodial parent is immaterial in determining his or her duty to contribute child support." *See D'Ambrosio v. D'Ambrosio,* 15 Or App 435, 438, 515 P2d 1353 (1973).

The Court of Appeals, the appellate court in which most of the appealed cases concerning child support are finally decided, rightly has considered the income of the custodial parent in determining the amount of support to be paid by the noncustodial parent. *See,* for examples, *Christopher and Christopher,* 39 Or App 739, 742, 593 P2d 1229 (1979); *Holt and Holt,* 34 Or App 827, 830-831, 579 P2d 1305 (1978).

---

[4] *See,* Franks, "How to Calculate Child Support," 86 *Case & Com* 3 (1981).

■       "Need" is that amount which is required for the actual, necessary expenses of providing for the child at the standard of living which would have been enjoyed but for the dissolution. All of the circumstances of the parties must be considered in the difficult factual determination of need, including:

1.  the physical and emotional condition of the child;

2.  the need and capacity of the child for education, including higher education;

3.  the age of the child; and

4.  the financial resources and earning ability of the child.[5]

We previously quoted the statement from *Trombley v. Trombley,* 225 Or 209, 211, 357 P2d 283 (1960), that in fixing the amount of support for spouse and children the court should take into consideration "comforts, and luxuries of life which she and their children probably would have enjoyed but for the divorce." ORS 107.108 makes provision for support for children attending school, including higher education.

■       The formula relating the incomes of both parents to the child's needs is a basic equation: the obligation of the noncustodial parent is that fraction of the needs of the child that his or her income represents in comparison to the combined incomes of both parents. Using "N" to represent the noncustodial parent and "C" to represent the custodial parent, the relationship looks like this:

$$\text{obligation of N} = \frac{\text{income of N}}{\text{income of N} + \text{income of C}} \times \text{needs of children}$$

At this point an example would be illustrative. Suppose that the noncustodial parent earns $20,000 per year, the custodial parent earns $10,000 per year, and the child's needs are $3,000 per year. The calculation of the

---

[5] The financial resources of the child would include income from all other sources such as trusts, Social Security, etc. In the present case, the $96.40/month that the child receives from Social Security would decrease the support needs of the child.

guideline for the annual child support obligation of the noncustodial parent would be as follows:

$$\text{obligation of N} = \frac{20{,}000}{20{,}000 + 10{,}000} \times {}_{3{,}000} = \frac{2}{3} \times 3{,}000 = 2{,}000$$

In the example, the noncustodial parent who earned 2/3 of the income was to pay 2/3 of the child support, leaving the custodial parent who earned 1/3 of the income to pay 1/3 of the child support.[6]

In the traditional situation, which this example represents, the noncustodial parent has the larger income and bears the greater portion of the financial burden of the child's upbringing.[7] If the custodial parent earned more than the noncustodial parent, the noncustodial parent's payments would be relatively small.

Once the calculation is complete, the ultimate decision as to the amount of child support is tempered by the court's consideration of circumstances such as the following:

1. the interrelationship of child support with the division of property and spousal support;[8]
2. the indirect forms of child support, including payments for medical care, life insurance in the child's name on the parent's life, a trust for the child's education, insurance for hospital, medical or dental expenses and so forth;[9]

---

[6] Under the case-by-case method, the child support obligation could not be predicted. Under the percentage method, the obligation would depend on the scale chosen. The Family Law Section of the American Bar Association suggests that the appropriate percentage for support of one child is 15% of the noncustodial parent's income where the custodial parent's income is equal to or less than that of the custodial parent. *See,* Bair, "How Much Temporary Support is Enough?", 1 *Family Advocate* 37 at 41, 48. In the hypothetical posed the support obligation would be $3,000 under that schedule. The problems with both methods are discussed *supra* at pages 8-9.

[7] If substantial visitation or joint custody is involved, the calculation of the annual child support obligation can be further refined. *See* Franks, *supra,* 3.

[8] *See Daly v. Daly,* 3 Or App 130, 133, 472 P2d 850 (1970).

[9] In the present case, the father's contribution of indirect support in the form of medical, hospital and dental insurance would reduce his obligations for direct, monetary support.

3. the income of the domestic associate or present spouse of each parent;[10]
4. the amount of assets of each parent, including the amount of equity in real or personal property.[11] property;
5. the existence of and support obligations to other dependents of each parent;[12] and
6. the special hardships of each parent.[13]

As the parties were unaware that this formula with modifying factors would be adopted, the record is incomplete as to the factors which this court must consider in determining support. The cause is remanded for further proceedings consistent with this opinion.

Remanded. Costs to neither party.

---

[10] *Apling and Apling,* 26 Or App 367, 552 P2d 567 (1976); *Batten and Batten,* 23 Or App 620, 543 P2d 33 (1975).

[11] *See e.g.,* ORS 416.420.

[12] *See e.g.,* ORS 416.420.

[13] Although we have adopted a mathematical formula as a guideline, we do not suggest that on every occasion in which there is a slight change in the elements of the formula there should be a modification of the amount of support. As we have previously held, a "substantial change" is necessary before a modification will be considered. *Hendrix v. Hendrix,* 246 Or 51, 423 P2d 774 (1967).

APPENDIX

| Case[a] | Father's Monthly Income | Mother's Monthly Income[b] | Number Of Children | Needs Of Children | Monthly Support Award |
|---|---|---|---|---|---|
| Hamilton v. Hamilton, 15 Or App 587 (1973) | $725 | --- | 1 | --- | $50 |
| Hockema v. Hockema, 18 Or App 273 (1974) | $760 | $150 | 2 | (over[c] $500) | $250 |
| Lake and Lake, 22 Or App 197 (1975) | $1,500 | $762 | 1 | ($950) | $200 |
| Grossi v. Grossi, 25 Or App 427 (1976) | $750 | --- | 1 | (over $359) | $90 |
| Rennacker v. Rennacker, 26 Or App 99 (1976) | $1,300 | $400 | 2 | --- | $250 |
| Duvall v. Duvall, 26 Or App 99 (1976) | $1,300 | $340 | 2 | --- | $400 |
| Apling v. Apling, 26 Or App 267 (1976) | $820 | --- | 3 | --- | $405 |
| Weiser and Weiser, 29 Or App 549 (1977) | $968 | $380 | 3 | ($703) | $450 |
| Stenerson v. Stenerson, 30 Or App 61 (1977) | $975 | $200 | 2 | ($600) | $300 |
| Hill and Hill, 31 Or App 41 (1977) | $1,125 | --- | 1 | --- | $150 |
| Holt and Holt, 34 Or App 827 (1978) | $1,333 gross | $917 gross | 2 | ($100 over income) | $250 |
| McClellan and McClellan, 35 Or App 437 (1978) | $725 | $660 | 2 | $500 | $200 |
| O'Brien and O'Brien, 35 Or App 769 (1978) | $1,679 gross | $325 | 2 | --- | $350 |
| DeBonny and DeBonny, 36 Or App 783 | $1,666 gross | $500 | 1 | --- | $250 |
| Nibler and Nibler, 38 Or App 589 (1979) | $1,650 | $0 | 2 | --- | $250 |
| Christopher and Christopher, 39 Or App 739 (1979) | $2,333 gross | $1,275 gross | 2 | ($975) | $350 |
| Slatsky and Slatsky, 42 Or App 281 (1979) | $1,250 | --- | 4 | --- | $600 |
| Pederson and Pedersen, 42 Or App 387 (1975) | $1,546 | --- | 2 | --- | $250 |
| Smith v. Smith, 48 Or App 222 (1980) | $1,348 | $1,100[d] | 1 | --- | $100 |

(a) This sample is not intended to be exhaustive or representative; it is merely a sample.

(b) The dash (---) indicates that the relevant information is not provided in the opinion of the Court of Appeals.

(c) Where the needs or expenses of the child are not indicated in the opinion, but the combined expenses of the mother and children are indicated, the amount is given in parentheses.

(d) It is worthy of note that the present case is the only one in which the father's monthly income and the mother's monthly income are approximately equal.