Argued and submitted February 14, affirmed as modified and remanded on husband's
appeal; remanded with instructions on wife's cross-appeal November 23, 1983

In the Matter of the Marriage of

BELT,
*Respondent - Cross-Appellant,*
*and*

BELT,
*Appellant - Cross-Respondent.*

(37335; CA A23818)

672 P2d 1205

Robert M. Johnstone, McMinnville, argued the cause for appellant - cross-respondent. With him on the briefs was Cushing, Johnstone & Peterson, P.C., McMinnville.

Kaye D. Brand, McMinnville, argued the cause for respondent - cross-appellant. With him on the brief was Craig, Brand & Lake, McMinnville.

Before Buttler, Presiding Judge, and Richardson and Warren, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this dissolution proceeding, both parties appeal from the property division and the amount of child support awarded. In addition, husband assigns error to the court's failure to order wife to share the cost of one of husband's expert witnesses, and wife assigns error to the court's refusal to award her attorney fees and costs, its requiring her to pay half of the fee for one of husband's expert witnesses and its refusal to order husband to pay all of wife's expert witness fees.

The parties were married for 15 years and have two teen-age children. By agreement, the decree gives them joint custody, and the children spend alternating weeks with each parent. Husband, a farmer, is a shareholder in, and is employed by, Beltview Farms, Inc., a closely held family dairy corporation; his monthly net income is approximately $1,227. Wife is employed and earns approximately $536, net, per month.

The trial court awarded husband the family home, his stock in Beltview Farms and specific items of personal property, the aggregate value of which the trial court determined to be approximately $238,776. Husband was ordered to pay $115 per month child support for each child and to pay one-half of the fees of wife's two expert witnesses, an accountant and a real estate appraiser. The court awarded wife real and personal property valued at $179,608 and, as a means of achieving an equal division of marital assets, awarded her a judgment against husband for $29,584. It also ordered wife to pay one-half of the fee for one of husband's expert witnesses, a real estate appraiser.

The parties do not quarrel with the proposition that the assets should be divided substantially equally. However, both contend that the trial court failed to achieve an equal division, husband contending that the value attributed to his stock in Beltview Farms is too high, and wife contending that it is too low. That stock represents husband's 9 percent interest in the family corporation. Although the corporate bylaws[1] permit a stockholder to sell his shares to an outsider,

---

[1] The bylaws provide, in pertinent part:

"In the event any stockholder of this corporation desires to sell all or any part of this stock, the corporation shall have the right of first refusal to purchase said

they give the corporation a right of first refusal for a period of 60 days to purchase the stock at the same price offered by any bona fide purchaser. If there is no such offer, then the book value of the stock at the end of the preceding calendar month shall be the purchase price. If the corporation elects not to exercise its right, then all of the other stockholders have the right to purchase the offerer's stock in proportion to the number of shares of stock that each of them owns.

Each of the parties takes an extreme position: husband contends that, because of the restrictive bylaw provision, his stock should be valued no higher than book value, which his expert witness testified was $59,253, and that the value of his interest, whatever it may be, should be discounted by as much as 50 percent, because it represents a minority interest in a closely held family corporation. Wife contends that the restrictive bylaw provision should have no effect on the valuation of the stock, and her expert witness testified that the fair market value of the stock was $132,200, apparently based on the corporation's net asset value. Although it is not clear how the trial court arrived at its valuation of the stock, it disregarded the book value; it went on to state that, because a sale of assets is not contemplated, it should consider only the "actual value" in reaching an equitable distribution. We assume that the court meant net asset value, but, on the other hand, it did not accept wife's expert's opinion of that value.

Instead, the court settled on the figure of $124,776, which is based on the value per share shown in the corporation's application for a loan, signed by husband, approximately one year prior to the trial. Husband testified that his brother determined that value and that he (husband) had not made any evaluation of the stock. The trial court's approach would not have been unreasonable if the corporation was about to be liquidated or if husband had the right to force a liquidation. Absent either of those circumstances, it is not proper to treat husband as owning an undivided interest in the

stock for a period of sixty (60) days at the same price as the stockholder is offered by any bona fide purchaser. If there is no such offer then the book value of the stock at the end of the preceding calendar month shall be the purchase price. In the event the corporation elects not to exercise its right then all other stockholders of the corporation shall have the same right in proportion to the number of shares of stock that they own."

corporate assets, which appears to be what the trial court did here.

■ We agree with wife that the stock should be valued at its fair market value, but we do not agree with her contention that the restrictive bylaw provision and the fact that husband's interest is a small minority interest have no effect in arriving at that valuation. On the other hand, husband's contention that the restrictive bylaw provision effectively fixes the value of the stock at its book value is an overstatement, because neither the corporation nor the other stockholders have the *right* to require husband to sell his stock at book value, and husband may not require the corporation or other stockholders to buy his stock at book value. It is true, however, that the existence of the right of first refusal, both in the corporation and in the other stockholders in proportion to their respective interests, probably would discourage a stranger from spending the time and money necessary to make a knowledgeable appraisal of the value of the stock to form the basis of an offer. It is also true that husband's small minority interest would have a substantial effect on the amount a stranger would be willing to pay.

■ There is no evidence that another family member, whether a stockholder or not, was interested in purchasing husband's stock or how much another such purchaser would be willing to pay. We are left, then, with attempting to arrive at the fair market value based on the record the parties have made, each taking an unacceptable position. The only evidence of the extent to which the value of the stock should be discounted because of the restrictive bylaw and its being a minority interest is that given by husband's expert that it should be discounted by as much as 50 percent. Wife's expert, in forming his opinion as to value, was not aware of the restrictive bylaw provision and did not discount the value for any reason. However, he testified that the value of a minority interest, as such, might be discounted by 5 percent and that a minority interest offered to a non-family member would justify a greater discount, but he did not say how much; he also stated that "it was hard to say" how the restrictive bylaw would effect the stock's value.

Given this state of the record, we think that the most reasonable solution is to accept wife's expert witness' opinion

as to the net asset value of the stock and to apply husband's expert witness' opinion as to the extent of the discount to arrive at its fair market value. Wife's expert testified that the stock had a value of $132,200, which, if discounted by 50 percent, would make its fair market value $66,100. The assets awarded to husband, other than the stock, were valued at $113,923. When $66,100 is added to those assets, husband received assets worth $180,023. The assets awarded to wife were valued by the trial court at $179,608, although our own computation indicates that the value of those assets is $184,108.29. In either event, the distribution of assets would be substantially equal. Accordingly, we modify the decree to eliminate the judgment in favor of wife.

Husband argues next that he should not have been ordered to pay child support, because the parties share custody equally and because wife did not prove the needs of the children. He also argues that, even if an award was appropriate, the amount set by the court was too high. Wife argues that the amount ordered was inadequate.

■■ To begin with, joint custody does not necessarily eliminate the obligation of one of the parents to pay support. Whether the obligation exists depends on the needs of the children; the objective is to provide them, as far as practical, "the comforts and luxuries of life" that they would have enjoyed but for the dissolution. *Smith v. Smith,* 290 Or 675, 626 P2d 342 (1981). All of the circumstances of the parties must be considered in determining whether to award child support and, if so, how much. The existence of joint custody is one circumstance to consider and, among other things, may increase the overall cost of providing for the children where, as here, two households must be maintained to accommodate them.

■ Both parties submitted statements showing their overall expenses, including those attributable to the children, and also statements showing separately the needs of the children. Based on those statements, it appears that wife's total expenses are $668.50 per month and that her monthly earned net income is $536; her estimate of the needs of the children is $230 for each, a total of $460. Husband stated that his total expenses were $1,245 per month, including $300 for child support awarded wife *pendente lite.* His estimate of the

needs of the children is $550 total; that figure includes more for food than does wife's estimate and also includes part of the cost for newspapers, dog food and life insurance for the children. From this record, we conclude that wife's statements are reasonable, that husband's expenses are somewhat over-stated and that, notwithstanding the joint custody arrange-ment, wife needs financial help in providing for the children while they are living with her.

■■ The question is how much husband ought to be required to pay. The formula adopted in *Smith v. Smith, supra,* is not by its terms applicable to joint custody when, as here, the children live alternately with each parent for approx-imately equal periods. However, a similar approach is apt. The combined incomes of husband and wife are $1,763 per month; husband's income of $1,227 is 69.6 percent of the total. After adjusting husband's statement of his expenditures for the children to what we believe to be more realistic, we conclude that the needs of the children when they are with each parent is approximately the same — $460 per month — or a total of $920. We think that it is reasonable to require husband to pay 69.6 percent of that total, or $640. Because he expends $460 per month on the children in his home, the balance of $180 should be paid to wife for child support.

The $230 awarded by the trial court exceeds the amount we have calculated under the *Smith* formula, as modified to accommodate joint custody. We modify the decree to provide that husband is required to pay monthly child support to wife in the amount of $90 for each child.

The parties also disagree with the court's order with respect to expert witness fees, costs and attorney fees. Each party secured the services of an accountant and a real estate appraiser for valuation purposes. Husband was ordered to pay half of wife's two expert witnesses' fees, but wife was ordered to pay only half of husband's appraiser's fee, and not his accountant's fee. Neither party was awarded costs or attorney fees.

■ Husband argues that wife should have been ordered to pay half of his accountant's fee, because it was reasonably incurred, ORS 107.105(1)(h), and because the parties were ordered to split all the other expert fees. Wife argues that husband should have been ordered to pay all of her expert's

fees and that she should have been awarded costs and attorney fees. We affirm the trial court's allocation of the expert witness fees. However, given the pretrial reluctance of husband to provide wife reasonable discovery and husband's alleged threat to damage property that might be awarded wife, all of which necessitated court appearances and court action, we conclude that wife should be awarded costs (in addition to expert fees already awarded) and a reasonable sum on account of attorney fees. Because the court denied attorney fees in its letter opinion, there is no record with respect to those fees, and the case must be remanded for a determination of the amount to be allowed.[2]

On husband's appeal, the decree is modified to eliminate the judgment in favor of wife (paragraph 13) and to provide $90 per month per child for support; on wife's cross-appeal, the decree is modified to allow wife costs and attorney fees, and the case is remanded for a determination of those amounts; as modified, affirmed. No costs on appeal to either party.

---

[2] Wife contends, without elaboration, that the court erred in awarding a horse, horse blanket, saddle and bridle to the parties' daughter. Husband asserts, and wife does not dispute, that wife had earlier told him he could have the horse, and he in turn gave it to his daughter. Wife has not provided any persuasive reason for modifying the order in this respect. She does not argue that the trial court is without authority to award property to someone not a party to the proceeding.