469 So.2d 172 (1985)
Coleen ROOK, Appellant,
v.
James K. ROOK, Appellee.
No. 83-607.
District Court of Appeal of Florida, Fifth District.
May 21, 1985.
Michael B. Swindle, Winter Park, for appellant.
James K. Rook, in pro. per.
EN BANC
COBB, Chief Judge.
We have considered this matter en banc for the dual purposes of (1) avoiding intracourt conflict with prior opinions of this court, and (2) establishing the policy of this court as a matter of "exceptional importance"[1] *173 in regard to the utilization of percentage guidelines in the review of monetary awards in domestic cases.
In the instant case the trial court, at a modification hearing, increased the child support award to $130.00 per month. At the time of the award, the father's net income was $1,190.00 per month and the custodial mother's net income was $800.00 per month. The father had remarried, and has two children by his second marriage. His second wife, according to the evidence adduced below, has no steady employment and no income figure for her was established. The first wife, Coleen Rook, appeals on the basis that the trial court's increase was so inadequate as to constitute an abuse of discretion.
The majority opinion by the original panel herein proposed to reverse the award based on Orange-Osceola Guidelines, which are not in the record before us. The appellant's brief urges that such guidelines were adopted in the Ninth Circuit as of November 1, 1975, and set child support for one dependent at 25% of the net income of the husband. The appellant also urges that the appellee's second marriage "does not relieve him of his primary responsibility" from the first marriage.
Our consideration and application of the asserted guidelines, as urged by the appellant, would contravene the fundamental precept that appellate cases are to be reviewed only upon the extant record. See Coffman Realty, Inc. v. Tosohatchee Game Preserve, 381 So.2d 1164 (Fla. 5th DCA 1980); affirmed, 413 So.2d 1 (Fla. 1982). Certainly, such local guidelines fail the test for judicial notice. See §§ 90.201-90.207, Fla. Stat. (1983). Moreover, the adoption of the Ninth Circuit guidelines by this court would arbitrarily impose them upon circuit courts in eleven other counties in the Fifth, Seventh and Eighteenth Circuits.
Even if such guidelines were part of the record in this case, they cannot serve as a substitute for the test prescribed by Canakaris[2] for appellate review, which recognizes the broad discretionary power of the trial judge:
... [W]here the action of the trial judge is within his judicial discretion, as in the establishment of the amount of alimony or award of child custody, the manner of appellate review is altogether different.
* * * * * *
... Our trial judges are granted this discretionary power because it is impossible to establish strict rules of law for every conceivable situation which could arise in the course of a domestic relation proceeding. The trial judge can ordinarily best determine what is appropriate and just because only he can personally observe the participants and events of the trial.
* * * * * *
... [T]hat discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
* * * * * *
... If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
Canakaris at 1202-1203.
We previously have recognized and applied this standard of review in declining to reverse a trial judge's discretionary findings in regard to support awards. See, e.g., Severs v. Severs, 426 So.2d 992 (Fla. 5th DCA 1983), and Hair v. Hair, 402 So.2d 1201 (Fla. 5th DCA 1981), review denied, 412 So.2d 465 (Fla. 1982). We also have *174 recognized that there are various factors to be considered by the trial court in setting alimony and child support awards. See Peak v. Peak, 411 So.2d 325 (Fla. 5th DCA 1982); Thompson v. Thompson, 402 So.2d 1220 (Fla. 5th DCA 1981). Therefore, the mechanistic approach of reviewing the trial court's discretion based solely upon fixed percentages assessed against noncustodial wage-earners would not only contravene Canakaris, but also would create intracourt conflict with Peak, Thompson, Severs, Hair, and other cases from this court utilizing the standard of review authorized by the Florida Supreme Court.
As to the priority of the support obligations emanating from sequential marriages, we can readily agree that a man under a fixed obligation of support who incurs subsequent obligations does so at his peril, insofar as enforcement and contempt proceedings are concerned. But the concept is different in regard to a modification increase, at which time pre-existent obligations are fixed by law. At that point, the trial judge is justified in considering other children the father is obligated to support. The so-called "first mortgage" theory in domestic law, referred to by the appellant, is illogical when applied, as urged in this case, to discriminate against dependent children of subsequent marriages. Cases cited for the proposition that first family obligations come first usually deal with attempts by a father to evade or reduce his child support obligation because of subsequent obligations he has voluntarily incurred. See, e.g., In Re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). That is not the situation before us.
In the instant case, the trial judge increased a child support obligation from $65.00 to $130.00 per month for the child of a first marriage. The appellant urges, in effect, that "no reasonable man would take the view adopted by the trial court." Canakaris at 1203. The $200.00 minimum figure sought by the appellant would result in the appellant and her daughter (two people) living on $1,000.00 per month; and the appellee, his present wife and his other two children (four people) living on $990.00 per month. The trial court's result is eminently more reasonable than that.
In Menendez v. Menendez, 435 So.2d 287 (Fla. 5th DCA), review denied, 441 So.2d 632 (Fla. 1983), we referred to income percentages suggested by the concurring opinion in Hughes v. Hughes, 421 So.2d 544 (Fla. 5th DCA 1982), but only as another factor to be considered with the enumerated factors set out in Peak v. Peak. Unfortunately, the Menendez reference to the "fair share" percentages suggested in the concurring opinion in Hughes has given rise to the argument that this court has adopted percentage guidelines which trial judges must follow, their discretion under Canakaris notwithstanding. For that reason, we recede from any implication in Menendez that this court will utilize arbitrary percentage guidelines as a review standard; we reaffirm our commitment to the rule of reasonableness articulated in Canakaris.
The second point on appeal raised by the appellant relative to the fairness of the attorney's fee award below is without merit.
AFFIRMED.
DAUKSCH, ORFINGER and FRANK D. UPCHURCH, Jr., JJ., concur.
SHARP, J., dissents with separate opinion.
COWART, J., dissents with separate opinion.
SHARP, Judge, dissenting.
Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), can be cited for many and sometimes conflicting concepts, and this case is a prime example. The proposed majority opinion in this case held that the trial judge had abused his discretion in not awarding more child support. It referred to Support Guidelines used in Orange, Osceola and Brevard Counties as a basis for comparison in making a determination of whether this support award constituted an abuse of discretion.[1] *175 Without this kind of "target range" we, as appellate judges, are forced to rely on "gut reactions," which vary considerably. Likewise, the trial judges are cast adrift to base such awards purely on their personal views and values.
Such a practice does not achieve one of the primary goals of a fair judicial system  equality of treatment under the law. Justice Overton voiced this concern in Canakaris.
[B]oth appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgments resulting from basically similar factual circumstances... . Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.
382 So.2d at 1203. Too great a variation in the amounts of child support awarded is one of the major criticisms of Florida's family law jurisprudence.[2]
The En Banc opinion regretfully retreats from the use of support guidelines in circuits where they have been adopted as a target range to test the reasonableness of sums awarded for support, as was suggested in Menendez v. Menendez, 435 So.2d 287 (Fla. 5th DCA), rev. denied, 441 So.2d 632 (Fla. 1983). Apparently, action by some other court or lawmaking body will be required to bring any kind of uniformity to our jurisdiction in the area of child support.[3]
In this case the former wife, Coleen, had raised the parties' child with only $15.00 per week assistance from James, the former husband. The trial court increased the award to $30.00 per week. But the child was twelve years old; was growing rapidly; had increased school activities, food and clothing costs; and needed dental work. Her needs far exceeded both the $30.00 per week awarded, and her mother's ability to pay for those additional sums. The trial court recognized this fact when it found there was a substantial change in circumstances, justifying an increase in child support.
The next step should then have been to look at the father's net income and any unusual expenses he may have had.[4] In *176 this case he was earning $1,190.00 per month net. He had a good job with IBM, and enjoyed various additional fringe benefits not figured into his net income, including a $130.00 car allowance.
At the time of the modification hearing, James was maintaining two residences, one in Orlando occupied by his second family, and one in Port St. Lucie for himself. He was estranged from his second wife, but was supporting two children by that marriage to some undetermined degree. These two children were the only persons he claimed as dependents on his income tax returns. His second wife was employed as a temporary helper with Kelly Girl, and was apparently self-supporting, although her income was not established in the record. However, seventy-eight percent of the living expenses established on James' financial affidavit were attributable to his sole living expenses incurred at Port St. Lucie.[5]
The amount of child support awarded in this case, $130.00 per month, is only approximately 10% of James' net income. This percentage is half of what James would be required to pay under the Orange-Osceola Guidelines. The Guidelines specify that support for one child living in a separate household should be 25% of the non-custodial parent's net income  an award of $297.50 per month in this case. The Brevard County Guidelines are more complicated, but the award calculated under them would not be less than 20% of James' net income, or $238.00 per month.
Viewing the $130.00 award in the light of what other non-custodial parents are typically being called upon to pay in this area as child support, given a similar net income, I think the $130.00 per month award was facially insufficient. Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984); Kozelski v. Kozelski, 448 So.2d 1228 (Fla. 2d DCA 1984); Peak v. Peak, 411 So.2d 325 (Fla. 5th DCA 1982).
In addition, I question whether James' obligations to his second family should be employed to reduce his obligations to his first child. Courts traditionally require that obligations to first families be fully and fairly met. See In Re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). But, even should his obligation to his second family be taken into account, the disparity in the award is too great. Had this child been living in the same household as the other two children, she would have been entitled to an award of one-third of 40% of James' net income, under the Orange-Osceola Guidelines, or $158.00 per month. The further irony in this case is that the record shows that James is not in fact supporting his other two children at that level, either.
Finally, I do not think that the income of the custodial parent, Coleen, should be used to reduce James' obligation to support their child. A child is entitled to share in the good fortunes and incomes of both of its parents. Ibanez v. Salazar, 459 So.2d 346 (Fla. 3d DCA 1984); see also Wanstall v. Wanstall, 427 So.2d 353 (Fla. 5th DCA 1983); Zammas v. Zammas, 328 So.2d 519 (Fla. 3rd DCA 1976). This is at least true where, as in this case, the needs of the child exceed the resources of its custodial parent.
The fallacy of the contrary view could be demonstrated in this case if Coleen's net income exceeded or equaled James'. Would his child support then be reduced to "zero" on the theory that the court must equalize the net incomes of both families? I suggest this is why most child support *177 guidelines do not take into account the income of the custodial parent; and why, until now, the income of the second spouse is not relevant to reduce the child support owed to a child of a prior marriage.
For these reasons, I respectfully dissent.
COWART, Judge, dissenting:
I agree with Judge Sharp's dissent. No area of legal practice needs improvement more than that involving the determination of a proper monetary award of child or spousal support.[1] In this area the legal profession has failed to insure equality of treatment under the law. The problem is widely recognized. In Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980), the Florida supreme court stated, "... both appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgment resulting from basically similar factual circumstances. The appellate courts have not been helpful in this regard. Our decisions and those of the district courts are difficult, if not impossible, to reconcile. The trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result. The trial courts' discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness." (emphasis supplied)
While the problem of substantial disparity in awarding child support has been recognized, little has been done and judicial efforts at the trial and appellate level to devise methods to eliminate or reduce inconsistency in rationale and disparity in result are usually opposed. Our system is one of the rule of law not the rule of man; yet decisions guided only by the personal "discretion" of each individual trial judge are necessarily arbitrary, capricious and whimsical without regard to the good faith of the trial judge. Most trial judges do not want to exercise arbitrary discretion and look with favor upon rules and guides which assure consistency and uniformity not only with respect to cases before the particular judge but also with respect to similar cases handled by many different judges. Even more important, when lawyers practicing marital law know of the general use of guidelines in support cases they can more adequately advise clients of a predictable result and settle support issues which results in great savings of judicial labor otherwise devoted to contested support issues.
There are two basic approaches to determining child support: a case-by-case approach where essentially the trial judge sets an amount based upon a "gut feeling" against a backdrop of general, vague propositions relating to "need", "ability" and other generally stated factors. The second method is to come to grips with the relevance or irrelevance of certain factors that are generally argued as relating to child support, to catalog the relevant factors and to determine what effect those factors should have upon a final result. There are two basic methods of doing this. One method takes an overall view and first relates the incomes of both parents to the child's total needs in a basic equation in which the obligation of the non-custodial parent is that fraction of the total needs of the child that the income of the non-custodial parent bears to the combined incomes of both parents. The other method primarily awards the child a certain percent of the non-custodial parent's net disposable income and with appropriate minimum and maximum parameters, etc. Both of the guideline methods are capable of being so formulated as to cause the result to be uniformly influenced by any relevant factor and to any degree and extent desired. Because of this capability, this approach is anything but "mechanistic" and can more *178 accurately, consistently, precisely and uniformly fashion a result from factors of varying importance than can ever be done by an unguided case-to-case approach. Astronauts did not fly to the moon by instinctive feeling or by "the seat of their pants" as was the method of navigation used by pioneer aviators. Neither should modern day jurists set child support in any such crude manner.
The formulation of rules of law ("good" guidelines) that will insure that the amount of support awarded in basically similar cases will be fair and uniform because it is based on the same relevant factors and criteria weighed in a similar manner in each case, does require a good understanding and a consensus as to the philosophy of child support, the result desired, the appropriate objective factors to be considered and the weight to be given the operative factors to achieve the result desired. This is not "impossible", it is only difficult. The job requires the application of specialized knowledge and experience and is a job for the courts, not the legislature. Many trial judges, seeing the need, have undertaken to promulgate guidelines which are in actual use to varying degrees in various areas. However, as recognized by the supreme court in Canakaris, encouragement, work and approval by the appellate courts is needed. Many have responded to the need. By appellate opinion Oregon and Pennsylvania have approved guidelines in the form of formulas portioning the child's needs between the custodial and non-custodial parent based on their proportionate incomes, see Smith v. Smith, 290 Or. 675, 626 P.2d 342 (1981), and Melzer v. Witsberger, 505 Pa. 462, 480 A.2d 991 (1984). North Carolina has approved the concept in Hamilton v. Hamilton, 57 N.C. App. 182, 290 S.E.2d 780 (1982), stating:
Plaintiff has set forth in her brief two possible formulas by which the amount of child support could be determined according to objective criteria. These formulas, based on guidelines appearing in professional publications, do not appear in the record and therefore cannot be considered on appeal. Nevertheless, the Court wishes to lend its approval to the employment of such guidelines by many trial courts and to encourage their use by others. A review of case law underscores the total lack of consistency in the amount of child support awarded by courts. Moreover, the route by which the court arrived at a particular award is too often impossible to fathom.
We concede that each domestic case is unique and that there must be an element of judicial discretion in setting the amount each parent should contribute to the support of his or her children. Such discretion, however, should not be unfettered. Employment of a standard such as one of those suggested by plaintiff would take into account the needs and resources of the parents, as well as the needs of the children, and would result in fair apportionment of responsibility in the majority of cases. While many others might not fit neatly into the established guidelines, the formula would provide a starting point for negotiations for formulation of judicial remedies. In cases where the trial judge determines, in his discretion, that considerations of fairness dictate a substantial departure from the standard award, we would recommend strongly that the court set forth specific findings of fact in support thereof. This would provide appellate courts with something more than the skeletal findings and conclusions on which we often must base our review of support orders.
Id. at 781.
However, Judge Sharp correctly reports that guidelines are coming. 42 U.S.C. § 667 (1984), effective October 1, 1987, provides that "Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State." That section also provides that "The Secretary [this means the Secretary of Health and Human Services or the federal bureaucracy] shall furnish technical assistance to the States for establishing the *179 guidelines ..." If the state judiciary wants to have anything to say about child support guidelines their innovation and use by the trial courts should be encouraged by the appellate courts now.[2]
In addition, the child support award in this case is "facially inadequate" or "facially insufficient." See Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984); Leopard v. Leopard, 464 So.2d 632 (Fla. 5th DCA 1985); Howard v. Howard, 468 So.2d 310 (Fla. 5th DCA 1985).
Florida appellate courts should encourage the development and use of good guidelines for the making of support awards in the trial court and their review on appeal.
NOTES
[1] See Florida Rule of Appellate Procedure 9.331(a), eff. January 1, 1985.
[2] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[1] The Ninth Judicial Circuit Guidelines were mentioned in Peak v. Peak, 411 So.2d 325 (Fla. 5th DCA 1982), where they were used to establish a target range to test the reasonableness of a child support award. They were first established by an Administrative Order on October 17, 1975, promulgated by the Chief Judge. Later they were adopted as local Rule 4 for the Circuit; and they were approved June 9, 1980 by the Florida Supreme Court. They are expressly applicable to temporary support awards, although they are often considered in making permanent awards. Peak.
[2] Rep. of the Sup.Ct.Comm. on Matrimonial Law, Recommendation III, (Jan. 31, 1983), reprinted in The Florida Bar Continuing Legal Education, Florida Proceedings After Dissolution of Marriage, Appendix II, at 281, 289 (1983). That recommendation and commentary provides, in pertinent part,

The Commission recommends the utilization of statewide guidelines for awarding temporary and permanent child support unless there is an agreement by the parties. The development of these guidelines will require input from both the bench and bar of all twenty circuits.
Commentary: Local guidelines are presently [sic] being used in the Third, Fifth, Ninth, Fourteenth, Seventeenth, and Twentieth Circuits in Florida. See Appendix B. The guidelines should be viewed as the name implies, only as guides which, if properly used, should result in less disparity in awards among judges.
[3] The new Child Support Enforcement Act mandates the promulgation by the states of nonbinding guidelines by 1987. 42 U.S.C. § 667 (1984). This legislation was enacted, according to its legislative history, in recognition of the "continuing problem that the amounts of support ordered are in many cases unrealistic." S.Rep. No. 98-378, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. Ad.News 2397, 2436.
[4] In Coble v. Coble, 300 N.C. 708, 268 S.E.2d 185, 190 (1980), the Supreme Court of North Carolina stated:

We note moreover that before liability or need may be predicated upon an analysis of the balance sheets of the respective parties, the trial court should be satisfied that the personal expenses itemized therein are reasonable under all the circumstances. We mention this consideration simply to remind the trial bench that a party's mere showing that expenses exceed income need not automatically trigger the conclusion that the expenses are reasonable, or that the party is incapable of providing support and in need of additional assistance. Indeed, the very fact that a party has a support obligation should always bear on the "reasonableness" of that party's personal expenses.
See County of Stanislaus v. Ross, 41 N.C. App. 518, 255 S.E.2d 229, 232 (1979) (Parent "may not avoid his duty to support his minor child by spending all the money he earns.").
[5] He testified he incurred for himself alone $100.00 for food, $25.00 for clothing, $75.00 medical expenses; $100.00 for incidentals; and $300.00 rent on his Port St. Lucie two bedroom home.
[1] See the dissent in Peak v. Peak, 411 So.2d 325 (Fla. 5th DCA 1982), and the concurring opinion in Hughes v. Hughes, 421 So.2d 544 (Fla. 5th DCA 1982).
[2] As reported on Page 10 of The Florida Bar News/April 1, 1985, the effect of the federal Child Support Enforcement Amendments of 1984 was the subject of a two-day national conference in Washington, D.C., on April 12 and 13, 1985, co-sponsored by the American Bar Association's Young Lawyers Division and the Family Law Section.